## ASA WARREN *versus* SAMUEL H. BLAKE.

Where the title of two adjoining closes becomes united in one person, all subordinate rights and easements are extinguished.

Where an owner of land surveyed and laid out into lots, with a street represented upon the recorded plan as running east and west between the two ranges of lots, simultaneously conveyed the south range to the defendant, commencing at the west end of the " southerly line of the street as laid down on" the plan, thence south and east, certain specified distances, thence north, up a specified stream, "to a point where a line drawn from the point of beginning, at right angles with" the first line "would strike said stream, thence westerly, at right angles with" the first line, "to the place of beginning;" and the north range to the plaintiff, commencing at the west end of the "southerly line of" the street "according to the plan, thence easterly by the line of said street, as laid down on said plan, to the" stream, "thence north and west," certain specified distances, "thence southerly," by a specified line, to the place of beginning; — *Held*, that the fee in all of the land covered by the street passed to the latter and not to the former.

The clauses in the deed to the grantor of the defendant, "with the buildings thereon," and "to have and to hold the above granted premises with all the privileges and appurtenances thereto belonging," will not pass the fee to so much of said street as is covered by the north end of the brick stable erected on the south range of lots, nor to the passage-way thereto, subject to an easement, to the plaintiff to pass thereon to his pasture.

If the owner of two adjoining closes, over one of which a convenient passage-way exists for the benefit of the other, simultaneously conveys them to two different purchasers, the right to use the passage-way will not pass as an easement or appurtenance to the purchaser of the latter close, unless such use be a matter of strict necessity.

ON REPORT.

WRIT OF ENTRY.

It appeared that the house was built about the year 1833, and the brick stable, ten feet of which was within the limits of Bridge street, a few years later; that, whilst Samuel Farrar lived there, he used the southerly side of Bridge street as a passage way to the rear of his buildings; that there was a stone monument still standing at north corner of Bridge and Court streets, and an old fence extending down near the middle of Bridge street, a short distance beyond the lower part of the stable, and from thence, at right angles, to the south line of Bridge street. This fence en-

closed a passage-way fifteen feet in width, from Court street to entrances into the stable, and closed on Court street by a wide and narrow gates. It was used by Farrar for more than twenty years, and was the only access he had to his garden, &c.; and, since Warren has owned the pasture, it has been the only way to it from Court street.

The remaining facts sufficiently appear in the opinion. The description of the premises will be readily understood by reference to the following diagram, representing a portion of Valentine's plan, with allottings omitted.

*J. A. Peters*, for the plaintiff.

*S. H. Blake, pro se.*

Defendant claims an easement in Bridge street, because,

1. There was no merger of Bridge street, by unity of title in S. Farrar, and because it is but one of the six streets into which the Hatch land was laid out. It was not an entirety. Others were interested.

2. S. Farrar's deed to Isaac Farrar, under which defendant claims, bounds defendant's premises by Bridge street, and hence gives him an easement. *Southerland* v. *Jackson*, 32 Maine, 81; *O'Linda* v. *Lothrop*, 21 Pick., 292; *Smyles* v. *Hastings*, 22 N. Y., 222. Bridge street exists upon the face of the earth, has stone monuments at its corners, a fence on its south line and an open space to the Kenduskeag; and it so existed, notwithstanding the unity of title, when Farrar conveyed, and it is referred to in that conveyance as an existing fact, and defendant is bounded by it as such, and he has an easement in it implied by such boundary and reference to it as a street. When Farrar divided the estate and conveyed the south part he revived the street, recognized it as existing, and his grantee has all the rights incident to and implied by such recognition. *Walker* v. *City of Worcester*, 6 Gray, 550.

If deed under which defendant claims had not referred to street, but simply conveyed lots included and numbered as by Valentine's plan, and no street had been marked out on the face of the earth, the deed would pass an easement in the street. *Bizzell* v. *N. Y. Cen. Railroad*, 23 N. Y., 64. Nor is it of any consequence, so far, that deed to plaintiff includes the site of Bridge street, — extending to its south line. 37 N. Y., 194; 23 N. Y., 65.

3. Defendant claims right to use passage-way as necessary to the use of the buildings. It has been used thirty years. It was granted by the deed. Washburn on Easements, 61, § 42; *Ib.*, 29, § 10; *Atkins* v. *Bullman*, 2 Met., 465; *Dunkle* v. *Wilton R. R. Co.*, 4 Foster, (N. H.)

502; *James* v. *Plane*, 4 Adolph. & Ellis, 749; *Lampman* v. *Wilks*, 21 N. Y., 510. Necessity does not create the way, but is merely the evidence that the parties must have intended to grant it. 1 Coms., 101; Washburn on Easements, 526, § 6. If the deed exclude the way by metes and bounds, still the way passes. *Hattemier* v. *Albro*, 18 N. Y., 751; *Leonard* v. *Leonard*, 2 Allen, 545. Necessity need not be absolute. *Pettingill* v. *Porter*, 8 Allen, 6. In granting a part of an estate, an easement has been reserved to the grantor without express terms, if it were *de facto* used in connection with it when granted, and were necessary to its enjoyment in the condition in which the estate was. *Pyer* v. *Carter*, 1 Hurlst. & N., 916; Washburn on Easements, 529, § 9.

4. Defendant claims that the fee of so much of Bridge street as the stable stands upon, and of the passage-way (subject to an easement by the plaintiff to his pasture below,) passed by the clause " with the buildings thereon" standing. The buildings were an entirety. Farrar could not have intended otherwise. Also, the *habendum* of the " above granted premises, with the privileges and appurtenances thereto belonging." The ground under the stable and the passage-way to it were " appurtenances" to the buildings and passed with the buildings. *Ammidown* v. *Ball*, 8 Allen, 293.

KENT, J.—Nathaniel Hatch, being owner of a considerable tract of land in Bangor, caused the same to be laid out into lots, and, by the plan made by the surveyor, which was recorded, a certain portion of the land is represented as streets, with designating names; one of these streets on the plan is called " Bridge street." Samuel Farrar, under whom both parties claim distinct parcels, became the owner of the land on both sides of this Bridge street. Whilst the title to the whole tract was thus in him, he, by deeds of the same date, conveyed to two persons, the plaintiff and the defendant's grantor, each a portion of the land, both conveyances

including the whole tract. The defendant's deed was recorded one day before the plaintiff's. The deed to the plaintiff in terms, and beyond dispute, includes the whole of the land in what is called Bridge street on the plan. The deed to the defendant's grantor, of same date, as clearly excludes from the lines therein given the land laid down as such street.

The plaintiff brings this real action to recover the land included in the street. The defendant pleads the general issue, and, by brief statement, claims an easement on Bridge street, and title to so much of the street as is covered by his stable and a narrow passage-way thereto.

Assuming that the defendant has such easement, or right to use the street as a private way, or for any purpose, we do not readily perceive why the plaintiff may not assert his legal title to the land, and recover possession under his title; leaving to the defendant to assert whatever right he may have by way of easement, or any similar legal right, after such recovery.

But the parties seem desirous to have all the questions between them determined by the Court, and we therefore have examined the whole case, and will now give the result of our investigations. What was the effect of the union of title in Samuel Farrar to both tracts of land, or rather, of the whole tract through which this street was laid on the plan?. Mr. Farrar first acquired title to the portion on the southerly side of the designated street by deeds from Nathaniel Hatch, which clearly and distinctly, by the description, bounded him on Bridge street. He acquired, subsequently, title to the portion on the northerly side through a levy made by a creditor of Hatch. The description in that levy included all the land covered by the street, as it made the south line of the tract levied on, the *south* line of what was called Bridge street. Samuel Farrar obtained this title under the levy, and in the deed to him the whole of the land covered by this street is expressly conveyed, but this portion is excepted from the covenants of warranty. The

whole tract, through which the street was designated, thus became the absolute property of Samuel Farrar. "When the possession of two closes is united in one person all subordinate rights and easements are extinguished." *Whalley* v. *Thompson*, 1 B. & P., 373.

The street was not a public street in any sense. It has never been laid out or accepted as such. If required as a public highway, it could only become such by a legal laying out. *Harwood* v. *Hutchinson*, 10 Maine, 335. But it is unquestionably true that individuals, who have taken deeds referring to a plan and bounded on a street, may claim a right to have it kept open for their reasonable use as a way, although the fee in no part of the street passed. *Sutherland* v. *Jackson*, 32 Maine, 80.

We are not called upon to discuss or decide the question, how far individuals holding deeds of lots on other streets, laid down on this plan of twelve acres, can claim a right to have this distant street always kept open. The question here is one of legal title, and the question of easement or right arises between grantees of the same individual, under deeds from him, after the whole tract through which the street passes had become his sole property. When the same person owns a tract of land or two adjoining lots, when no public or private rights are interposed, he may carve out and sell any portion that he pleases, and the terms of the grant as they can be learned from the language of the deed, or by just and legal construction, will regulate and measure the rights of the grantee. *Salisbury* v. *Andrews*, 19 Pick., 250.

He may sell a house, without the easement; he may sell a part of a house, or a house without the outbuildings; and, if this appears to have been done, in clear and explicit and unmistakeable language, there is no place or right for a Court to doubt or question, or to refuse to carry out, in its judgment, the legal result. *Ibid.* And so, if there is a private way over such premises, actually in use, or designated on a plan, and no one else has a legal right to use it,

he may discontinue it, in whole or in part, and may sell and convey the fee in the land over which such way was laid out or used. *Whalley* v. *Thompson*, 1 Bos. & Puller, 373.

What did Samuel Farrar actually do, after this union of titles in himself? The defendant claims that, by his deed to Isaac Farrar, his grantor, he in fact conveyed the fee to the middle of Bridge street, by bounding him on that street. But did he thus bound him? By deeds of the same date, he conveyed, as before stated, all the land on both sides of the street and including the land in the street.

, In the deed to Isaac Farrar, he commences the description of the premises granted at a point on Court street, where the southerly line of Bridge street intersects that street. This is the only reference in that deed to Bridge street. The lines then run southerly by Court street, and from thence to Kenduskeag stream, then up the stream to a point, where a line drawn from the point of beginning, at right angles with said Court street, would strike said stream, thence westerly, at right angles with Court street, to the place of beginning. In this last line, and in the fixing of the points of its departure, there seems to be a studious avoidance of any recognition of the line of Bridge street as the boundary. It may be that the line, as described, would nearly, if not entirely correspond with the line of that street on the plan. But the deed does not bound him on that street, *eo nomine*, and the reason for this careful omission is doubtless to be found in the fact, that in the deed of the other parcel to the plaintiff, on the same day, the description of the premises, as clearly and carefully included *all* the street in the grant. And this in fee, and not as a street. For, instead of beginning on the *north* line of this Bridge street, as he naturally would, if he had intended to recognize it as a street, and running by such north line, he begins at the same point that he does in the deed of the other parcel, viz. : the point in the southerly line of Bridge street; but instead of running as before along Court street, he, in this deed to the plaintiff, describes the next

line as "easterly by the line of said street, as laid down on the plan, to Kenduskeag stream, then around the lot lines, on the stream, and then to Court street, and then on Court street "to the point of beginning," i. e. the *southerly* line of Bridge street. This description very clearly conveys the fee in the whole street as a part of the lot, and not as a street. The common grantor, on the same day, therefore, evidently and purposely, used words in both deeds to express his intention of disregarding the location and existence of this street in the future.

It has been decided in this State, that a grant of land, bounded in terms on a highway, carries the fee to the centre of the way, if there are no words to show a contrary intent. As in the case where a man, owning on both sides of a road laid out through his land, sells and bounds on each side by the road. *Johnson* v. *Anderson*, 18 Maine, 76.

But where, by the deed, the limits given clearly exclude the land in the street, and bound the party on a line, not named expressly as the line of the street, (as a wall or fence,) although in fact coinciding with the line of the way, it has been held that the fee did not pass, although there might be a right to use the way. *Sutherland* v. *Jackson*, 32 Maine, 80; *Tyler* v. *Hammond*, 11 Pick., 193; *Howard* v. *Hutchinson*, 10 Maine, 335. The intention of the party is an essential element, to be gathered from his language in his deed. We do not find anything in the deeds from which an intention to grant a fee in this street to Isaac Farrar can be fairly established. On the contrary, it appears plainly, that he did not intend to do so, and that he did not do so, taking both deeds into consideration.

The defendant further contends that, if he obtained no fee in the street, by the boundaries mentioned in his deed, he did acquire *a fee*, (and not merely an easement,) in so much of Bridge street as the stable covers, and in the passageway thereto, — subject to an easement in the plaintiff to pass thereon to his pasture. This he claims as granted by the deed to Isaac Farrar, and as distinct from the claim, hereaf-

ter considered, of a right by necessity, or an easement, which was attached to the freehold granted.

We have already seen that a man may deed as he pleases, and by such lines as he sees fit to designate as the limits of his grant. These may seem to others as singular and perhaps absurd. But the Court has no power to go beyond them, and fix other lines, which to them may appear more sensible and reasonable, in view of the actual situation of the property.

In this case, we find that the grantor did actually convey to this plaintiff, in fee, all the land which is claimed by defendant, by his proposition. We further find that he limited the defendant's grantor, by a distinct and perfectly straight and unswerving line from Court street to the stream. We are now asked to change this line, and make one in lieu of it, that shall make two right angles, so as to include a passage-way and a part of a stable. This claim is based on the words in the deed — " with the buildings thereon standing," — and the usual general clause in the *habendum*, — " to have and to hold the above granted premises, with the privileges and appurtenances thereto belonging."

Where a deed of land describes it by bounds and admeasurements in feet and inches, and also adds the words " or however otherwise the same is bounded, or reputed to be bounded, being the mansion house and land thereto belonging," — it was held that this sweeping clause did not enlarge the grant, although, if these latter words had stood alone, they would have carried the mansion house and land belonging to it, but not being embraced in the particular description by metes and bounds they did not pass.

It is familiar law that land cannot pass as appurtenant to land, although an easement may. The question is, whether by any fair construction of the deed, it, by its own force, conveyed the fee to this strip.

In the case of *Ammidown* v. *Ball*, 8 Allen, 293, cited and relied upon by the defendant, the question was whether a small parcel, or curtilage, enclosed and used with the

house, passed, although not within the lines as given in the deed. The opinion of the Court finds a distinction between this case and the ordinary one arising under a general expression in the *habendum*, in the fact that, in the description of the land granted, after giving the boundaries, these words are added, "together with *all* the dwellinghouse and building, *with the appurtenances* situated thereon or belonging thereto," and then follows the usual and general *habendum*. It was held that the word "appurtenances," first used, referred to the appurtenances belonging to the house, and not those belonging to the estate generally; that the deed not only conveys the whole land, with its privileges and appurtenances, generally, but mentions the house and building with *their* appurtenances. It is admitted that land cannot be appurtenant to land or to a house, but it was concluded in this case, that, by the special language of the deed, and the *repetition* of the word, this small triangular piece was actually granted by the deed and passed as an appurtenant to the house.

This case, therefore, although it is the strongest case for the defendant, we have seen, is not a direct authority, by reason of the distinction above stated. It does not meet this case; as here the word "appurtenances," was only used in the *habendum* generally. We can find nothing in this case which would authorize us to declare that the legal title or fee in the land, in the street outside of the boundaries given, passed to the defendant. The plaintiff acquired title, as we have seen, by deed of same day. *Whalley* v. *Thompson*, 1 Bos. & Pull., 373, before cited. The defendant, in his able argument, which evinces research and a full and fair presentation of all the questions arising in the case, does not press the point last alluded to with as much elaborateness and confidence as he does another analogous to it. He insists that if the *legal title* to the land covered by the street, or the passage-way, did not pass, and if he acquired no right of any kind in Bridge street, as such, yet he has an easement or right of way in that strip, used as a passage-

Warren *v.* Blake.

way, and on which a part of his stable stands.   He claims this as fairly arising under the deed from Samuel to Isaac Farrar, from whom he claims.

It is well settled that an easement, or right to use or to occupy land, not within the lines given in a deed, may be claimed and held as a right, when the fee of the land does not pass.   The question is, when and how far does that right become vested under such a deed?   A distinction is made between a deed conveying in terms a particular house, or messuage, or farm, known by a certain name, without defined limits, and a deed conveying a specific piece of land, carved out of a larger piece, held by the grantors, and exactly described by metes and bounds.   In the former case, where the grant is by name and not bounds, many things will pass which have been used with the principal thing, as parcel of the granted premises, which would not pass under a grant of a piece of land by metes and bounds. *Grant* v. *Chase*, 17 Mass., 443.   But even in the latter case an easement or right may pass.   Whenever the thing granted cannot be used for any beneficial purpose by the grantee, without some use of other property of grantor, the law, which always assumes that the parties intended that the purchaser or grantee should have possession and use of the thing conveyed, infers, as a part of the grant, a right to use that other property, so far as necessary to the fair enjoyment of what was conveyed, although not expressly named in the deed.   The common illustration is that of a conveyance of a parcel of land, say one acre, by metes and bounds, out of the centre of a lot, entirely surrounded by other land of grantor.   In this case the law infers, as part of the grant, a right of access over that other land to the grantee of the acre.   The ground on which this right is based is that of *necessity*.   And this example seems to have been the foundation for the whole doctrine on this subject, which has found its way into the law.   This doctrine, in some reported cases in this country and in England, starting from this point of *necessity*, has been apparently extend-

ed to cases of convenience, and to what was, in fact, in use by the grantor at the time of the conveyance. This has sometimes arisen from not observing the distinction before alluded to between a grant of a messuage by name and one by precise metes and bounds.

We have examined with care the authorities cited, and some others, but do not deem it necessary to allude to each, by a statement in detail of the facts and reasoning. Some of the leading cases on this subject, cited by defendant, are *Atkins* v. *Boardman*, 2 Met., 465; *Dunkle* v. *Wilton R. R.*, 4 Foster, (N. H.,) 502; *Lampman* v. *Wilks*, 21 N. Y., 510; *Hattemein* v. *Albro*, 18 N. Y., 751; *Leonard* v. *Leonard*, 2 Allen, 545, and the leading English case of *Pyer* v. *Carter*, 1 Hurls. & Norman, 916.

The last named case would seem to decide that, on the grant of a part of an estate, an easement might be claimed as reserved or granted, without express reservation, or grant, if it were, *de facto*, used in connection with it at the time of the grant, and was necessary to its enjoyment in the condition in which the estate then was. Here, although the word "necessity" is used, it is limited to the necessity in using the property in its then condition and according to the prior use. But is this the true rule?

This case of *Pyer* v. *Carter* has been very recently, not merely doubted, but denied by the Chancellor of England, in the case of *Suffield* v. *Brown*, reported in 10 Jurist, (N. S.,) part 1, p. 111. The Chancellor distinctly denies the doctrine that, where an owner of an entirety sells and grants a part of it in the fullest manner, there will still be reserved to such owner all such continuous, apparent, or necessary easements out of or upon the thing granted, as have been used by the owner of the whole, and for the part reserved. If the vendor was in the habit of using a part in connection, and for convenience of another part, when owning the whole parcel, his right to do so was cut off, and released by necessary operation of an unqualified sale and conveyance of the subservient property. The Chancellor

also holds, that notice of the manner of using before convey-
ance given to the grantee would not make any difference in
the rights of the parties, which must be determined by the
deed. The Court in Massachusetts has had this question be-
fore them in several cases. *Nichols* v. *Luce,* 24 Pick.,
102 ; *Johnson* v. *Jordan,* 2 Met., 234 ; *Thayer* v. *Paine,*
2 Cush., 327 ; *Casberry* v. *Willis,* 7 Allen, 364 ; *Randall* v.
*McLaughlin,* 10 Allen, 366.

The law, as settled in that Commonwealth, is stated with
precision by Mr. Justice HOAR, in *Casberry* v. *Willis,* —
" where there is a grant of land *by metes and bounds,* without
express reservation, and with full covenants of warranty
against incumbrances, we think there is no just reason to
hold that there can be any reservation by *implication,* unless
the easement is *strictly one of necessity.* Where the easement
is only one of existing use, and great convenience, but for
which a substitute can be furnished by reasonable labor and
expense, the grantor may certainly cut himself off from it
by his deed, if such is the intention of the parties. And it
is difficult to see how such an intention could be more clear-
ly and distinctly intimated than by such a deed and warran-
ty. The exceptions are of things appendant to the granted
premises, and which are naturally or necessarily annexed to
them, such as a natural watercourse, and perhaps an arti-
ficial conduit, running to the granted premises from other
land of the grantee. A way, when it is strictly a way of
necessity, has been considered as falling under the same
rule, and as passing to the grantee, or being reserved by the
grantor, without any express words of grant or reservation.
In the case at bar, the way, and other privileges, claimed
by defendant, were not annexed to the sugar house estate
by any natural or legal necessity." In the same case, the
fact of unity of possession and seizin in the grantor is con-
sidered. It is said, that " it does not appear that the way
and other privileges were ever used or claimed before Estes
became seized of both houses. And, if they had existed be-
fore that time, the right would have been extinguished by

the unity of title in Estes," * * * "and could not be claimed afterwards, without a new grant. Whilst both estates were owned by Blanchard, no easement could be created by any use of the drain, for the benefit of one."

This case, from which we have extracted so largely, is reaffirmed in the very recent case of *Randall* v. *McLaughlin*, 10 Allen, 366.

We adopt, substantially, the same view of the law, as in accordance with authority and as sustained by reason and expediency. If we adopt any other rule than that of strict necessity, we open a door to doubt and uncertainty, to the disturbance and questioning of titles, and to controversies as to matters of fact, outside of the language or boundaries of the deed. If an estate, fully granted without exception or reservation, can be encumbered forever by an easement, or right of use by a third party, by the finding of a jury that such use would be highly convenient, or that it was exercised by a former owner, or was notorious, or any other ground short of strict necessity, the sanctity and security of titles by deeds, exact and precise in their terms, would be seriously shaken and impaired. The record gives no notice of any such right or easement.

Without a more particular examination of the cases to which we have referred, and which we have examined, we will simply apply the rule we have stated to the facts in the case before us.

On the one hand, it appears that Samuel Farrar, whilst he lived on the premises, used a strip about fifteen feet wide, of what is called Bridge street, as a passage-way to the rear of his buildings, to his garden, and to his pasture, (now owned by the plaintiff,) and for his cow and horse to go into and out of his stable, and to get hay to his stable and coal to his shed and house. And he had in use no other access to his garden and ice house for a team. On the other hand, it appears that his house and lot were bounded on Court street, and that, according to his witnesses' testimony, " there is no natural impediment to making a road

through his premises, and round his house, and up to his stable." It would seem that such a way would be more circuitous and expensive than the present one, but not impracticable or very expensive.

There can be no doubt that this way, thus used, was highly convenient and useful to the estate conveyed to the defendant. It certainly does appear somewhat singular, and almost inexplicable, that, in conveying the estate on the same day, to two persons, in separate parcels, the common grantor should have so carefully and clearly conveyed the whole of the land covered by this street and passage-way, in fee, with covenants of warranty, and with no reservation in favor of the other lot, to one person, and, in the deed to the other, of the estate he lived on, with equal care, should have limited it by a strict line, not even referring to the street or passage-way as a boundary, and apparently intending to ignore and abolish all rights or claims of use or easement. But he did do so, and the parties accepted and entered under their deeds and we cannot alter them.

We feel bound to subject the facts to the test of strict necessity, as before explained, and we cannot find the existence of any such necessity as would create a perpetual easement in favor of the estate owned by the defendant, over the estate granted to the plaintiff.

The result is, that the plaintiff is entitled to judgment.

Judgment for the demandant for possession of the land demanded in his writ and declaration and costs.

APPLETON, C. J., CUTTING, DICKERSON and BARROWS, JJ., concurred.