FIELD v. MARK *et al., Appellants.*

Division Two, December 18, 1894.

1. **Practice**: JUDGE, PARTY TO A SUIT, CALLING ON JUDGE OF ANOTHER CIRCUIT: STATUTE. Where a judge is a party to an action, he may, under Revised Statutes, 1889, section 3322, request the judge of another circuit to hold court for him.

2. **Land**: CONVEYANCE: DESCRIPTION: STREET AND ALLEY. Where an owner of land conveys to another a part thereof and describes it as abutting upon a street or alley, when there is in fact no such street or alley, but a strip of the grantor's land answering to a street or alley is left abutting the tract so conveyed, an implied covenant arises that a street shall remain open for public use. *Aliter*, where, as in this case, the conveyance makes no reference to a street or alley.

Field v. Mark.

3. ———: ———: WAY OF NECESSITY. The mere fact that a strip of land if used as an alley would be a great convenience to adjacent property does not make it a way of necessity.

4. ———: PRIVATE WAY: USER: ADVERSE POSSESSION. Mere use and enjoyment by one of land as a private way do not establish a right thereto; there must also be an adverse use for a period of time sufficient to bar recovery of possession of land.

5. ———: PUBLIC WAY: USER: ADVERSE POSSESSION. So when *user* alone by the public, disconnected with any act of the owner showing an intent to dedicate, is relied on as evidence of a dedication of a right of way to the public, it must be adverse and continue for the requisite time to defeat recovery of possession of land.

6. ———: ———: ———: ———. The fact that an owner permitted the public generally to pass over a strip of land in connection with the use thereof by himself and his tenants, does not show an intent on his part to dedicate the strip to public use, where at times he maintained gates across the strip and exercised other acts of ownership.

*Appeal from Lafayette Circuit Court.*—HON. C. W. SLOAN, Special Judge.

REVERSED.

*John S. Blackwell* and *J. D. Shewalter* for appellants.

(1) There was no express grant on the right of way. The deed from Samuel Wilson to Caroline Mitchell described the ground by metes and bounds. A grant of land to or bounded by a street or alley, when there is none, where the strip is owned by the grantor, will give a right of way over the strip to the grantee. This we admit to be law. *Moses v. Dock Co.*, 84 Mo. 242; *Carlin v. Paul*, 11 Mo. 32; *O'Linda v. Lothrop*, 21 Pick. 292; *Toby v. Taunton*, 119 Mass. 404; *Lewis v. Beatie*, 105 Mass. 410; *Dodge v. Railroad*, 43 N. J. Eq. 351. This claim under a grant is effectually disposed of by the production of the deed from Samuel Wilson, claimed by plaintiff as lost. (2) A

way by necessity can only arise where land is sold and there is no way of reaching it, except over the land of the grantor. *Snyder v. Warford*, 11 Mo. 514; *Trask v. Patterson*, 29 Me. 499; *Perman v. Mead*, 2 Mass. 203; *Wisler v. Hershey*, 23 Pa. St. 333; *Kripp v. Curtis*, 71 Cal. 62. (3) But here the land conveyed fronted sixty feet on a public street on one side, and forty feet on another on a public alley. Mere convenience and usefulness will not establish a right of way of necessity. *Colville v. Judy*, 73 Mo. 651; *Cox v. Tipton*, 18 Mo. App. 450; *Oliver v. Pitman*, 98 Mass. 46; *Anderson v. Buchanan*, 8 Ind. 132; *Moses v. Bates*, 74 Ala. 376. (4) Nor does the right exist when one can get to his land by going over his own land, no matter how inconvenient it may be; or when the highway can otherwise be reached. *McDonald v. Lindall*, 3 Rawle, 492; *Ogden v. Grove*, 38 Pa. St. 487; *Francis's Appeal*, 96 Pa. St. 200; *Parsons v. Phillips*, 68 N. Y. 62; *Pentland v. Keep*, 41 Wis. 490; *Gayetty v. Bethune*, 14 Mass. 49; *Russell v. Jackson*, 2 Pick. 574. (5) When lot runs from one street to another and is then divided, no right of way, from one part over the other to street from which it is cut off, exists. *Schyniser v. Phelps*, 62 How. Pr. 1; *Nicholas v. Luce*, 24 Pick. 102; *Francis's Appeal*, 96 Pa. St. 200. (6) Nor was there any right of way by implication arising on severance of the estate. For such a way by implication can only arise when it is a way of necessity. *Warren v. Blake*, 54 Me. 276; *Hall v. McLevel*, 2 Met. (Ky.) 198; *Carbrey v. Willis*, 7 Allen, 364; *Outerbridge v. Phelps*, 58 How. Pr. 77. (7) To gain a right of way by prescription there must be an adverse user for the period required to bar an action. *Bauman v. Boeckeler*, 119 Mo. 189; *Barnes v. Haynes*, 13 Gray, 188; *Nicholls v. Wentworth*, 100 N. Y. 455; *Barbour v. Pierce*, 42 Cal. 657; *Ferrell v. Ferrell*, 57 Tenn. 329; *Kuhlman v. Hecht*, 77 Ill.

570; *Puryear v. Clements*, 53 Ga. 233.    (8) In the case at bar there is no right of way by prescription for the following reasons:    *First.*  Mere use and enjoyment is not sufficient; the user must be adverse.  *Hall v. McLeod*, 2 Metc. (Ky.) 98;  *Thomas v. England*, 71 Cal. 456; *Dexter v. Tree*, 117 Ill. 532.    *Second.*  The use must not be permission or a mere license, for in such case there can be no right of way by prescription.  *Nelson v. Nelson*, 41 Mo. App. 130; *Flora v. Carbeau*, 38 N. Y. 111; *Hill v. Hagerman*, 84 Ind. 287.   And mere use does not show it is adverse.  *Zigefoose v. Zigefoose*, 69 Iowa, 392.    *Third.*  To sustain a claim of a right of way by prescription, the user must come strictly within the definition, *i. e.*, a right to pass and repass, and when the claimant shows a use by himself and those under whom he claims, and it is shown that the right of way was used by others, no right of way is established for the obstruction of which he can sue.  *Brink v. Collier*, 56 Mo. 160; *Landis v. Hamilton*, 77 Mo. 554; *House v. Montgomery*, 19 Mo. App. 170; *Price v. Wilburn*, 1 Rich. 58; *Day v. Allench*, 22 Md. 521; *Dodge v. Stacy*, 39 Vt. 558.    (9) There was a fence along the alley at rear of the lot—sometimes up, sometimes down —also part of time from northwest corner shop to fence west.    (10) There was a partition fence on west of lot, none dividing ten feet from six feet; and if a right of way exists over ten feet, then it does over sixteen feet.

*Wallace & Chiles* and *William Aull* for respondent.

(1) The use of a way by the public for the period of ten years, acquiesced in by the landowner, gives to the public the use of such, as a public highway. *Zimmerman v. Snowden*, 88 Mo. 218; *State v. Walters*, 67 Mo. 463;  *State v. Proctor*, 90 Mo. 336; *State v. Bradley*, 31 Mo. App. 308.   In the case at bar the use

of both alleys was for twenty years or more, not only with the knowledge and acquiescence, but the permission of the owner of the land, Samuel Wilson. Whether this is a public or private way, respondent has the right to recover. *Carlin v. Paul*, 11 Mo. 32. (2) Even a license to use can not be revoked by the licensor, if money and labor have been expended by reason of and in consideration of having been given the license; there is an equitable estoppel against the licensor. Mitchell paid high prices for these small parcels of land, and the blacksmith shop and Klug residence were built so as to require the use of these alleys for their enjoyment and proper use. Wilson was present when the shop was being built, and joined in with Mitchell in building the brick privy across the ten foot alley. These acts will give an easement in the alleys. *House v. Montgomery*, 19 Mo. App. 170, and cases cited. (3) Grant of the land carries the easement, whether described in the deed or not. *Stillwill v. Railroad*, 39 Mo. App. 221; 6 Lawson's Rights and Remedies, sec. 2775, and notes; *Prescott v. Williams*, 39 Am. Dec. 688. A grant carries everything necessary to the enjoyment of the thing granted. *Washburn v. Salisbury*, 152 Mass. 346. (4) "There is no particular form necessary in the dedication of land to public use. All that is required is assent of owner and the fact of it being used. * * * If the owner of the soil open a passage and neither marks by visible distinction that he means to preserve all the rights over it, nor excludes persons from passing through it by positive prohibition, he shall be presumed to have dedicated it to the public." *Cincinnati v. White's Lessees*, 6 Peters (U. S.) 431. *Gamble v. St. Louis*, 12 Mo. 617; *Rose v. St. Charles*, 49 Mo. 509; *Baker v. St. Charles*, 37 Mo. 13; *Kaime v. Harty*, 73 Mo. 316. If accepted and used by the public, the dedication is complete, precluding the

owner and those claiming under him from asserting an ownership inconsistent with such use. *Pierce v. Chamberlain*, 82 Mo. 618. (5) The facts show, also, that these are ways arising from necessity and not mere convenience, as appellants claim. (6) Respondent is entitled to the enjoyment of this easement in kind, and is not bound to exchange this right for such damages as a jury might give him. *Lakenan v. Railroad*, 36 Mo. App. 363; *Church v. Kellar*, 39 Mo. App. 441; *McLemore v. McNeley*, 56 Mo. App. 557.

GANTT, P. J.—Plaintiff, by his action, seeks to have removed certain alleged obstructions from parts of lot 1, block 45, first addition to Lexington, being a strip of five feet in width, extending from Laurel street west about forty feet, and also a strip about ten feet wide, extending from the alley through said block north about sixty feet, claiming that the said strips constitute private ways or alleys, and that the same had been obstructed by the defendants. The allegations of the petition are traversed by the answer, and absolute ownership of the parts of said lot claimed as alleys is alleged to be in the defendants, and, further, that defendants and those under whom they claim title have been in the open, continuous, peaceable and adverse possession as such owners for more than ten years next before the beginning of the suit. These allegations are put in issue by the reply.

Block 45 was divided into regular lots, twenty in number, six being on each side of an alley twenty feet wide, running east and west through the said block, Main street being on the north and Laurel street in the east of the said block, and lot number 1 being the east and north lot in the tier of lots, having the said Main street on the north, Laurel street on the east and the public alley on the south. See plat.

Field v. Mark.

PLAN OF BUILDINGS ON LOTS 1 & 2, BLOCK 45, LEXINGTON, MO.

Samuel Wilson, now deceased, became the owner of lot 1, and also, subsequently, of six feet and three inches off of the east side of lot 2, which gave him a frontage of sixty feet and three inches on Main street, by a hundred and forty feet back of said alley. At this time the entire property was vacant. In 1864 he conveyed to Caroline Mitchell a part of lot one, out of the southeast corner, being twenty feet on Laurel street, running back along the alley forty feet, and in April, 1867, he also conveyed to said Caroline Mitchell another part of lot 1, being forty feet on Laurel street, by forty feet deep, and just north of last place; and in the same month, 1867, he conveyed to Alexander Mitchell, Stephen G. Wentworth and William Morrison (afterward Morrison-Wentworth Bank) a portion of lot 1 out of the northeast corner, being twenty feet on Main street, running back seventy-five feet. This left the title in Samuel Wilson, as will be seen, of a strip five feet wide between Morrison-Wentworth Bank and the last property conveyed to Caroline Mitchell, running back twenty feet and abutting on the ground or parcel next below described. It also left a strip next to the Morrison-Wentworth bank of twenty feet on Main street by sixty feet deep; also, ten feet off of the west side of lot 1 and six feet, three inches off of the east side of lot 2, making sixteen feet and three inches on Main street, and running back a hundred and forty feet to the public alley. Soon after these conveyances respectively, Mitchell built upon the piece first conveyed to his wife, in the southeast corner, a blacksmith shop, which covered the entire space of twenty by forty feet; the Morrison-Wentworth bank erected a building practically covering their entire lot, while Samuel Wilson built two store rooms, two stories, covering his entire frontage on Main street, and running back seventy-five feet. Plaintiff, by mesne

conveyances, became the owner of the Caroline Mitchell sixty feet fronting on Laurel street and forty feet deep, and abutting on the south of the twenty feet public alley in the center of the block.

Samuel Wilson died seized of record of the thirty-six feet, three inches, fronting on Main street, adjoining the Morrison-Wentworth Bank building and running back, the east twenty feet, eighty feet, and the west sixteen feet three inches, one hundred and forty feet to the alley in the center of the block and a strip five feet in width and twenty feet long lying between the Mitchell property and Morrison-Wentworth Bank building. His estate was duly partitioned and all of the last above described tracts or parcels were assigned to his widow, Mrs. Jane H. Wilson, in fee.

In March, 1887, she conveyed all this land to William and David Smith, by warranty deed. In the succeeding April, David and William Smith conveyed the east half of the front on Main street to S. G. Wentworth and William Morrison by warranty deed, and included the five feet between the bank and the Mitchell sixty feet on Laurel street, and a strip eight feet wide back to the alley and adjoining the Mitchell lots on the west, with right to passage in the stairway leading up to the building in the rear and reserving the right to use, occupancy and right of ingress and egress over the passway of five feet in the rear of the bank, and the continuation of said line to west line of said property conveyed. In October, 1887, Wentworth and Morrison conveyed the last described tracts by the same description by warranty deed to Ed Mark, reserving a right of way over the strip of five feet.

In 1891 the defendants Ed. and Herman Mark bought the west half of the lots fronting on Main street and adjoining the last described tract and all the remainder of the Samuel Wilson tract. Defendants

thus became the record owners of the two tracts in which plaintiff claims the easement of a private alley·

After the purchase by Caroline Mitchell, as before said, she sold off of the north end of lot 2 a strip twenty feet on Laurel street running back forty feet. On this ground Klug erected a two story brick building running back about twenty-five feet, leaving a small yard in the rear, which was fenced, having two gates, one to the north opening into what is claimed as the five foot alley; one to the south, opening into the lot between this building and the blacksmith shop, out of which there was another gate opening onto Laurel street. Klug, if he desired a side entrance, instead of leaving one out of his own property, covered the entire frontage with his building, the lower part of which was used as a shop, with a stairway running to the second story, which was used as a residence.

Shortly after the purchase of the first tract (20x40) by Caroline Mitchell, her husband, John A. Mitchell, built a brick blacksmith shop covering its entire dimensions, and with a door in the rear opening upon the ten foot strip in controversy, which was used by the blacksmith as a way in and out of his shop for horses, which were forbidden by city ordinance from being led on the sidewalk to· enter at the front. The building was erected, and this use of the strip was made, with the knowledge and consent of Samuel Wilson, who also about that time built, conjointly with Mitchell, a double brick privy west of the blacksmith shop, and just beyond the ten foot strip, on the west side of lot 2, then also owned by Wilson. Wilson and Mithell together marked off the side of this privy, and one part of it was used in connection with the shop until it was torn down in 1887 by the Smith Brothers. Plaintiff claims this as an act of Wilson marking the width of the alley at the south end, and dedicating it to public use. At the north

end of the ten foot alley just south of the five foot alley and just west of the ten foot alley over on lot 2, Wilson constructed a cistern, which is claimed by plaintiff as marking the western limit of the ten foot alley at its north end, and the southern limit of the five foot alley at its west end. The five foot alley was paved throughout with brick at an early day, probably just after the buildings were erected and so kept until the suit was brought. The middle 20x40 was never built upon, but used as a yard for storing odds and ends from the blacksmith shop, and a fence was always maintained on its west side next to the strip in dispute. During most of the time a fence was maintained west of the strip, running from the brick privy north.

All of the deeds from Samuel Wilson were by metes and bounds, describing the property as so many feet on certain streets, running back to designated monuments (stakes) and *contained no reference whatever to any private alleys or rights of way.*

The evidence on both sides tends to show that the entrance on Laurel street to the five foot strip was generally open and the adjoining proprietors and tenants, and the public generally, passed through it at will as they desired. On the part of plaintiff it is in evidence that a swinging gate was maintained at the west end of this strip to keep out boys and dogs. After defendants purchased the two storerooms, and a saloon in one of them was closed out, they put a permanent gate with a lock across this west entrance to the five feet. This is one of the obstructions plaintiff seeks to remove. They then ran a fence across the south end of the ten foot alley and built a coal house and privy on the ten foot strip and obstructed it with a pile of brick and rubbish.

Thereupon plaintiff served defendants with the following notice or demand dated twenty-first of July, 1892; Lexington, Missouri signed by Richard Field:

"I am the owner and in possession of following real estate in Lexington, Lafayette county, Missouri: Part of lot 1, block 45, 1st addition to Lexington, bounded as follows: Beginning at a point on west boundary line of Laurel or Ninth street, eighty feet from northeast corner of said lot 1, and running thence west with the line of a five foot alley forty feet to a ten foot alley, thence south with said last mentioned alley sixty feet to a sixteen foot alley, thence east along the north side of said last mentioned alley forty feet to Laurel or Ninth street, thence north with the west line of Laurel or Ninth street sixty feet to the place of beginning. I am entitled to unobstructed use of five foot alley on north side, and of ten foot alley on west side of above described real estate. You are hereby notified to remove from alley all bricks, etc., that prevents the free use of said alleys by first of August, 1892." Duly served by the sheriff of Lafayette county on Edward Mark and Herman Mark.

Caroline Mitchell, John A. Mitchell, Francis Klug and Samuel Wilson have all been dead for a number of years.

I.   The plaintiff in this case is the regular judge of the circuit court of Lafayette county, and, therefore, incompetent to sit in the case.  Accordingly, when the case was reached, we find this record of the proceedings on the seventeenth day of the September term, 1892:

"Now at this day the Honorable Richard Field, regular judge of this court being a party to this action, by agreement of parties, the Honorable Charles W. Sloan, judge of the Seventh judicial circuit, is selected to try this cause.  And the parties in person, and by their attorneys, appearing, this cause is now taken up and submitted to the court for final hearing and trial without a jury, and the evidence being partly heard

and the hour of adjournment coming on, this cause is adjourned until to-morrow morning at 9 o'clock."

No objection or exception was made or saved to the selection of Judge Sloan until the point was made in the motion in arrest. It is now contended that his selection was without authority of law and his acts as judge in the cause null and void.

It is provided by section 3322 that whenever the judge of any circuit shall, for any cause, be unable to hold a term, or part of a term, of court in any county in his circuit, he may request the judge of another circuit to hold it for him, who shall in such case possess all the powers of the judge of the circuit, and section 3323 further provides, that whenever the judge, if in attendance, for any reason, can not properly preside in any cause in his court, and the parties fail to agree upon an attorney of the court, an election shall be held to select one of the attorneys of the court then in attendance to hold the court.

The contention now is that, as the parties had not agreed upon an attorney of the court, an election was absolutely essential and that section 3322 does not apply and the judge has no power to call in another judge. We do not think section 3322 has any such restricted meaning. The language could hardly be more comprehensive. If "for any cause" he shall be unable to hold the term or part of it, he may call in another judge. Being a party to the suit, he was rendered unable by the law to try the cause or hold that part of the term devoted to the trial of this cause. He could have called in another judge without consulting the other side, but when, as the record shows, he consulted their wishes and they with him agreed upon Judge Sloan, the point is without merit either in ethics or law.

II.  When the owner of land grants to another a parcel of said land and describes it as abutting upon a street or alley, when there is in fact no such street or alley, but a strip of the grantor's land answering to a street or alley is left abutting the tract so conveyed, there arises an implied covenant that a street shall remain open thereon for the public use.  *Heitz v. St. Louis,* 110 Mo. 618; *Moses v. Sectional Dock Co.,* 84 Mo. 242; *Buschmann v. St. Louis,* 121 Mo. 523.

In this case there is no such recital.  Samuel Wilson conveyed each of these three twenty-foot lots facing on Laurel street by metes and bounds but makes no reference to any alley on the west.  It must, then, in the outset be conceded that plaintiff's right to this strip as an alley does not arise out of an express grant, or by necessary implication from the recitals in the deeds under which he claims.

Nor do we think plaintiff can seriously claim that he is entitled to this alley as a way of necessity, which is itself an implication from the grant.  That it would be a great convenience to these lots of plaintiff to have an alley in the rear is apparent, but it can hardly be said to be a necessity.  Certainly it is not a necessity to the blacksmith shop.  This twenty feet has a street in front and alley along its whole southern side, and the other two lots abut on the east on Laurel street. It is not enough that this alley would be even a great convenience; in the situation of this property it is not in the legal sense a way of necessity.  *Carbrey v. Willis,* 7 Allen, 364; *Nichols v. Luce,* 24 Pick. 102; *Grant v. Chase,* 17 Mass. 443; *Parsons v. Johnson,* 68 N. Y. 62; *Whalley v. Tompson,* 1 B. & P. 373; *Warren v. Blake,* 54 Me. 276; *Francies's Appeal,* 96 Pa. St. 200.  So that, if plaintiff is entitled to a private way over these strips, it must flow from an exclusive

adverse use for the period required to bar an action. Mere use and enjoyment are not sufficient.

Both the character of this property and its location must be taken into consideration in reaching a correct conclusion in this matter. When Samuel Wilson sold, there was no alley in the rear. He owned sixteen feet and three inches in width in the rear of these lots, but he owned two storerooms fronting on Main street to which this sixteen feet three inches was valuable as a way of approach and for outhouses. That it was used for this is not to be questioned; nor do we doubt that he permitted Mr. Mitchell and Mr. Klug to use it along with his tenants in connection with their business. That Mitchell shod horses on the ten feet next to the alley is clearly established, but it seems to us equally as well established that there was a fence along this alley, with a gate in it. This fence was sometimes up and sometimes down and the gate was off and on, but most clearly the use of this *cul de sac* fell far short of establishing a public alley therein. The fact that Samuel Wilson permitted his vendees and the public generally to pass over this land in the rear of his stores, in connection with the use of it by himself and his tenants, does not, in our opinion, make out a case of intent on his part to dedicate to public use. The fences and gates he erected across both pieces and his exercise of ownership in other ways rebut such an assumption. The use by the public was not such as to indicate an abandonment of the strip exclusively to the use of the community, and, when user alone, disconnected with any act of the owner showing an intent to dedicate, is relied on as evidence of a dedication of a right of way to the public, it must continue the length of time necessary to bar an action to recover possession of land, and it must be adverse.

We are disposed to concede much to the judgment

of the learned circuit court in the trial of a question of fact, but in this case, granting that all the witnesses of plaintiff are entitled to credit, and we assume they were and certainly have no disposition to intimate otherwise, still on their own showing it seems to us, they make out merely a case of neighborly license, and fail to furnish that measure of proof required by our laws to divest the title of real estate out of the real owner and vest it in that intangible entity, the public, or an adjoining proprietor. *State v. Young*, 27 Mo. 259; *Brinck v. Collier*, 56 Mo. 160; *Landis v. Hamilton*, 77 Mo. 554; *Bauman v. Boeckeler*, 119 Mo. 189; Elliott on Roads and Streets, p. 96, note 3.

The great number of witnesses precludes our giving even a synopsis of the testimony, but we have gone carefully through the abstract, which is conceded to be fair, and from the evidence we think the court erred in granting the injunction, and in holding that the facts entitled plaintiff to an easement over these strips as appurtenant to his lots, and the judgment is accordingly reversed. All of this division concur.