WILLIAM MARSHALL AND MINNIE MARSHALL, RESPONDENTS v. ALFRED CALLAHAN AND LOTTIE CALLAHAN, APPELLANTS.—229 SW (2) 730.

Springfield Court of Appeals. Opinion delivered April 6, 1950.

*A. W. Landis,* for appellants.

*Green & Green, Will H. D. Green, H. D. Green* for respondents.

VANDEVENTER, P. J.—This cause was begun by the plaintiffs (respondents) filing a petition in the Circuit Court of Howell County, Missouri, praying the issuance of a mandatory injunction against the defendants (appellants) requiring them to remove obstructions from a road which the plaintiffs alleged was a private road or lane, by prescription, leading across defendants' land, connecting plaintiffs' residence with their farm and that said road or lane has been in use "continually, openly, adversely and notoriously for more than 50 years." The right of plaintiffs to maintain their action was denied in defendants' answer and the points raised will be more specifically referred to in the course of this opinion.

The situs of this litigation is the SW¼ of Section 34, Township 23, Range 10, North, in Howell County, Missouri. A short history of the title to this quarter section is necessary for an understanding of the issues. The north half of this quarter section (80 acres) was conveyed to George R. Callahan, the father of Minnie Marshall, and Alfred M. Callahan, by a patent from the United States, dated February 2, 1900. The SE¼ of this quarter section was deeded to G. R. (George R.) Callahan by W. J. Murphy, a single man, by warranty deed August 30, 1906. The other 40 acres of this quarter section (SW¼ of the SW¼) was owned by other parties and is referred to as the "Summers" or "McDaniel" forty. On January 18, 1915, G. R. (George R.) Callahan conveyed the N½ and the SE¼ of this quarter section to his wife, Minerva J. (Jane) Callahan, who was the mother of Minnie Marshall and Alfred Callahan. Minerva J. Callahan died May 25, 1928 and George Callahan, her husband, died in April, 1937. Until her death, the title remained in Minerva J. Callahan and after the death of Minerva and George, in their children as heirs or tenants in common until April 22, 1940, at which time by mutual exchanges of warranty deeds between the heirs, plaintiffs became the owners of all of the N½ and the SE¼ of the SW¼ of the quarter section in controversy. Plaintiffs on that day conveyed to defendants, by warranty deed, the S½ of the SE¼ of the SW¼ of said quarter section. The lane in controversy was not reserved or mentioned in this deed.

Plaintiffs own a farm of 220 acres on the south side of Highway 80 and south of this twenty acres, so conveyed. On this farm was their residence, located approximately south of the center of this quarter section, and at the south end of the lane, which was alleged to have been obstructed. Highway 80 is a black top road, and runs east and west between the Marshall home farm and the 20 acres of defendants. On the east side of the SW¼ of Section 34, running the full length thereof, north from Highway 80, was a county road which

could be and was traveled by automobiles and other vehicles. Running north from Highway 80 on the west side of the quarter section, was a public road which was also used for vehicular traffic. The public road on the west bordered the plaintiffs' pasture farm by one-fourth mile and the county road on the east bordered it three-eighths of a mile. Near the center of this quarter section was an old barn, but there is no evidence that it was being used. The entire one hundred acres was used for pasture and much of it was covered with timber. The land extends north from Highway 80, one-eighth of a mile on the west end of defendants' twenty acres, to the plaintiffs' pasture land.

The trial court granted a permanent mandatory injunction upon the theory that the plaintiffs had acquired a private road by prescription and the obstructions were ordered removed.

The decree was rendered September 7, 1948 and the record shows that the chancellor's docket contains the following minutes:

"Decree and judgment for plaintiffs as per prayer of petition and injunction made permanent—Court finding being the road in question has been shown to have the standing of a public road by prescription; and on the question of establishment of public road by consideration paid by parole agreement or reasonable necessity failure of proof on such issues."

The decree grants a permanent injunction and states:

"The Court finds that the road in question as described in the pleadings has been shown to have the standing of a road by prescription."

From this judgment and decree, the defendants have appealed.

This being an equity case, it is heard de novo by this court. The responsibility is ours to render such a judgment and decree as we think should have been rendered by the trial court, at the same time giving due deference to the advantageous position of the chancellor in being able to see and hear the witnesses as they testified at the trial. State ex rel. Wallach v. Raeder (Mo. App.) 196 S. W. (2) 19. Held v. Reis, (Mo.) 193 S. W. (2) 17. Binnion v. Clark (Mo.) 221 S. W. (2) 214. Thomas v. Milfeit (Mo. App.) 222 S. W. (2) 359. Palich v. Hermann (Mo. App.) 219 S. W. (2) 849. Rubenstein v. City of Salem, (Mo. App.) 210 S. W. (2) 382.

The decree does not specifically state whether the Chancellor found the road to be of a public or private nature but under no theory of the case could it have been a public road because there is no evidence that it had been used for ten consecutive years prior to March 30, 1887. (Laws of Missouri 1887, p. 257, Sec. 57. Jordon v. Parsons 239 Mo. App. 766, 199 S. W. (2) 881.) Neither is there evidence that it had been opened by the county court and used for ten years continuously or that it had been used by the public for ten years continuously and public money had been spent thereon for such

period (Sec. 8485 M. R. S. A. 1939. State ex rel. McIntosh v. Haworth et al. (Mo. App.) 124 S. W. (2) 653.

But did the evidence show that the plaintiffs were entitled to use the lane in question across defendants' land, as a private road or easement, by prescription? The evidence on this issue, on the part of the plaintiffs, was that this lane had been used intermittently for from 25 to possibly 60 years. But there is no proof that this user was hostile, (Kelsey v. City of Shrewsbury 71 S. W. (2) 730, 335 79) or that defendants knew the use of the road was under claim of right and in defiance of their title. (Allen v. Wiseman, (Mo. Sup.) 224 S. W. (2) 1010. Anson v. Tietze 354 Mo. 552, 190 S. W. (2) 193. Fassold v. Schamburg 350 Mo. 464, 166 S. W. (2) 571.)

The lane was over rough land and at one time part of it had been across what was known as the "Summers" or "McDaniel" forty (SW¼ of SW¼) so it would be near a water hole on that land. There is no evidence that it was ever worked or improved by anyone. The evidence did show that many years ago a "yoke of oxen" had been driven over it. The evidence shows that it was sometimes used for driving cattle, going on horseback or on foot but there was no positive evidence that it was used or could be used for an automobile, buggy, or wagon. At one time a tractor had been driven over it. The evidence shows it was more of a trail than a road. How often it was used or what period of time does not clearly appear but in the testimony of Plaintiff, Wm. Marshall, we find the following:

"Q. Have you used this lane during the years, that is 7 or 8 going back and forth up there?

"A. Yes, sir."

Mrs. Marshall testified she drove cattle through the lane every few days since this lawsuit was instituted.

Plaintiff, Wm. Marshall, contended that as part of the consideration for the 20 acres, the defendant, Alfred Callahan, agreed to leave the lane open and in support of that contention the record shows the following question to which an objection was sustained by the court:

"Q. Now Mr. Marshall at the time that you were negotiating and delivery was made by you and wife deeding the 20 acres to Mr. Callahan and his wife did you have any agreement or was there any part of the consideration in regard to this lane?"

However, the witness (plaintiff, Wm. Marshall) answered:

"A. I told him we wouldn't deed it to him unless he deeded us a right of way through the lane and he said it had been a road too long and he couldn't close it if he wanted to."

This was again objected to and the objection overruled.

The record further shows Mr. Marshall testifying:

"Q. State whether or not as part of the agreement it was agreed to leave the road open?

"A. It absolutely is."

On cross examination, he testified further:

"Q. Do you know whether this statement or alleged agreement you testified to was before or after the dates of the deeds?

"A. I suppose it was afterwards.

"Q. You wouldn't say?

"A. I am sure it was. .

\*         \*         \*         \*

"Q. You say that there was an agreement between you and Callahan that he would keep this road open, when was that made?

"A. It was in the deal in making the trade."

On the other hand, this testimony was emphatically denied by defendant, Alfred Callahan. Assuming but not deciding, that evidence of this character was admissible to show that this alleged agreement was part of the consideration, it was not clear, cogent and convincing.

When the deed was made to the defendants by plaintiffs, they had title to the entire tract. They did not demand or receive a deed to the roadway. There was no reservation or mention in the deed, executed by plaintiffs, of the right of way or easement that plaintiffs now value so highly. It would have been a simple matter to have provided for this easement in the deed and then it would have been of record and there could have been no question as to the rights of the parties. From the fact that the plaintiffs did not include it arises the inference that it was not part of the consideration because they were selling the property, were preparing and executing the deed to the 20 acres, and had full opportunity to protect themselves if such was the understanding.

In Restatement of the Law, Property, Servitudes, Vol. 5, page 2979, Sec. 476 the law is stated thus:

"In construing conveyances doubts are resolved in favor of the conveyee and against the conveyor. To a greater extent than is true of the conveyee the conveyor controls both the language of the conveyance and the circumstances under which it is made and has the power to make the language of the conveyance express the intention of the parties. To the extent to which this is true his failure to make it do so is held to operate to his disadvantage rather than to the disadvantage of the conveyee. What is true in construing the language of a conveyance is likewise true in drawing inferences from the circumstances under which the conveyance was made. Accordingly, circumstances which may be sufficient to imply the creation of an easement in favor of a conveyee may not be sufficient to imply the creation of one in favor of the conveyor."

Doubts arising as to the intention of the parties must be resolved in favor of the free and untrammeled use of the land. Gardner v.

Maffitt 335 Mo. 959, 74 S. W. (2) 604. The evidence does not show a private road or easement by prescription.

The undisputed evidence shows that plaintiffs could go ⅛ mile north from the east end of the home farm on the county road and be at their pasture farm. Unquestionably they could also go west from their residence on the paved highway ¼ mile and north ¼ mile over a public road and reach the Southwest corner of their north 80. Plaintiffs have ample means of ingress and egress to their pasture farm and are not entitled to the lane as a way of necessity. Rice v. Wade 131 Mo. App. 338, 111 S. W. 594. Plaintiffs claim an implied easement in the lane in question as a way of necessity. The evidence does not sustain that contention, in fact it clearly shows that such is not the case. In Schnider v. M. E. H. Realty Co. 239 Mo. App. 546, 193 S. W. (2) 69, Judge Cave, speaking for the Kansas City Court of Appeals, exhaustively reviews the authorities on the degree of necessity that will justify an implied easement, discusses the differences between strict necessity, (See Bales v. Butts, 309 Mo. 142, 274 S. W. 679) and reasonable necessity and holds that the present trend of authority is to require reasonable necessity only, but then states:

"Where a party can, at reasonable expense, secure, over his own property, the relief which he seeks to impress upon another's property by an implied easement, the essential element of necessity is missing and his claim must fail. (Citing numerous cases)

"All authorities agree that no implication of a grant of an easement arises from proof that the easement will be convenient in the occupation or use of the land granted—the foundation of the easement must be *necessity* and not *convenience.*

In that case the evidence showed that the defendant could eliminate the necessity of an easement on adjoining property by the expenditure of $2,000.00. In the case at bar, there would be no expenditure, whatsoever. In driving cattle or going to the pasture farm, plaintiff would be required to cross paved highway 80, whether they went by the public road on the west, the county road on the east or the lane in the center. There is a great deal of difference between convenience and necessity. A mere convenience or a shorter route is not sufficient to create or convey a right or easement, or impose burdens on land other than those granted, as incidents to the grant. Bussmeyer v. Jablonsky 145 S. W. 772, 241 Mo. 681. Vossen v. Dautel 116 Mo. 379, 22 S. W. 734. Field v. Mark 125 Mo. 502, 28 S. W. 1004. We are not convinced that traveling the lane, which was rough, would be more convenient than traveling the good county road on the east or the public road on the west. But, be that as it may, the use of that lane is certainly not shown to be either a strict or reasonable necessity.

The law does not favor implication easements. In this case the effectuation of plaintiffs' contentions would be to change or modify the plain terms of a warranty deed; to saddle upon the fee simple title a burden not shown by the record. To do this the evidence must be clear, cogent and convincing. Schnider v. M. E. H. Realty Co. 239 Mo. App. 546, 193 S. W. (2) 69. In this case it falls far short. The reason for this rule is clearly stated in Warren v. Blake 54 Me. 276, 89 Am. Dec. 748, where it is said: (l. c. 289)

"If we adopt any other rule than that of strict necessity, we open a door to doubt and uncertainty, to the disturbance and questioning of titles, and to controversies as to matters of fact, outside of the language or boundaries of the deed. If an estate, fully granted without exception or reservations, can be encumbered forever by an easement, or right of use by a third party, by the finding of a jury that such use would be highly convenient, or that it was exercised by a former owner, or was notorious, or any other ground short of strict necessity, the sanctity and security of titles by deeds exact and precise in their terms, would be seriously shaken and impaired. The record gives no notice of any such right or easement."

Foxx et al. v. Thompson, (Mo.) 216 S. W. (2) 87.

To acquire an easement, there must be a dominant and servient estate and they must not be lodged in the same person. Gardner v. Maffitt 335 Mo. 959, 74 S. W. (2) 604. State ex rel. v. Hughes, 351 Mo. 488, 173 S. W. (2) 45. Bales v. Butts, 309 Mo. 142, 274 S. W. 679. Vossen v. Dautel 116 Mo. 379, 22 S. W. 734. One who owns the fee can not acquire an easement over it. The easement, if one existed, is merged into the fee. There is no evidence in this case that plaintiffs acquired any prescriptive rights in this lane when it was owned by their father and mother or either of them. Mrs. Marshall was only six or seven years of age at that time they acquired it. Upon the death of her parents and until April 22, 1940, the children owned the entire 120 acres as tenants in common and the presumption would be that each held with and for the other. 1 Am. Jur. Adverse Possession Sec. 51, Hynds et al. v. Hynds 274 Mo. 123, 202 S. W. 387, Mann et al. v. Mann et al. 353 Mo. 619, 183 S. W. (2) 557. Allen v. Morris et al. 244 Mo. 357, 148 S. W. 905. Doyle et al. v. Brown, et al. (Mo.) 88 S. W. (2) 889. Indeed, this joint ownership was recognized by the mutual exchange of the various deeds of plaintiff, Minnie Marshall, and her brothers and sisters by which plaintiffs obtained their title. Between April 22, 1940 and the filing of this suit (Jan. 12, 1947) ten years had not elapsed and they could not have acquired title by prescription. The most that can be said from the evidence is that it shows a permissive right or license to use the lane in controversy but that it was with no intention of permitting it to develop into a prescriptive right and become a burden upon the fee. Foxx et al. v. Thompson, (Mo.) 216 S. W. (2) 87.

Respondents contend that the lane was open and visible at the time the land was purchased by the appellants, and that it came within the doctrine announced in Missouri Power & Light Co. v. Thomas et ux., 102 S. W. (2) 564, 340 Mo. 1022, where it was stated:

"Where there is a sale of a tract of land upon which there is an obvious existing easement or burden of any kind like an ordinary highway, a railroad or mill pond, the fair presumption, in the absence of any express provision in the contract upon the subject is, that both parties act with direct reference to the apparent existing burden, and that the vendor demands and the purchaser pays only the value of the land subject to it."

With the law pronounced in that case, we find no fault. But the facts in the case before us do not bring it within the doctrine there announced. If the road described in evidence in the case before us was so obvious that one purchasing the land over which it ran would take title subject to that easement, then there would be no safety in accepting any deed to land over which there was an old road or trail. It was not an apparent existing burden upon the land.

We have carefully read the cases cited by Respondents but they are not controlling when applied to the facts in this case.

We think the Chancellor was correct in finding that the right of way contended for was not part of the consideration for the twenty acres, that the road was not established by a parole agreement between the parties and that there was no reasonable necessity for it, but we think he was in error in holding that it had "the standing of a road by prescription." The judgment should therefore be reversed and the cause remanded with directions to the trial court to dismiss respondents' petition for want of equity. It is so ordered.

*Blair, J.,* and *McDowell, J.,* concur.