## Vossen v. Dautel, *Appellant.*

### Division One, June 5, 1893.

116 379
61a 426
116 379
133 584
116 379
143 98
116 379
77a 332

1. **Highway:** DEDICATION, EVIDENCE OF. While the dedication of land as a highway for public use may be shown by the acts and declarations of the owner and need not be evidenced by writing, still an intention to dedicate must appear.

2. ———: ———. Acts and declarations will not be sufficient evidence of a dedication unless they are of such a character as to show a clear purpose on the part of the land owner to devote the property to public use.

3. ———: ———: ACCEPTANCE BY THE PUBLIC. There must be an acceptance by the public to constitute a common law dedication.

Vossen v. Dautel.

4. ————: WAY OF NECESSITY: PRESUMPTION. While a grant of a right of way is presumed to have been made wherever land has been sold which is inaccessible except by passing over the land of the grantor or by committing a trespass on land of a stranger, still such presumption does not arise where the person claiming such way of necessity has other access to the land.

5. ————: ————. One cannot have such way of necessity because it is more convenient than the way he already has.

6. ————: ————. So the necessity limits the duration of the right of way of necessity.

7. **Highway**: PRESCRIPTION: TENANT. One cannot acquire a prescriptive right of way over his own lands, or the lands of another which he occupies as a tenant.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED.

*John W. Booth* and *Wm. F. Broadhead* for appellant.

(1) The grant of land bounded in part by a public road cannot raise an implied grant of a private way over other land of the grantor, in the absence of proof that some part of the land granted could not be reached from the road forming part of its boundary. The law implies a grant of a way only from necessity. "Convenience, even very great convenience, is not sufficient." Persons who desire ways of convenience against their grantors should stipulate therefor and have the same inserted in their deeds. See *Nichols v. Luce*, 24 Pickering 102 (cited by trial court), and *Chase v. Hall*, 41 Mo. App. 15. (2) The evidence as to the travel over the land of defendant brings the case to the same level as the facts in the case of *Stacy v. Miller*, 14 Mo. 478. Neither the public nor any individual acquire any right by permissive use, according to the custom of the country. (3) A tenant cannot by prescription acquire an easement in land belonging to his landlord. Goddard

on Easements [Bennett's Ed.], pp. 12, 160, 174. (4) In order to the acquisition of a way by prescription, the way used must be maintained in substantially the same place, and the use must be unequivocally such as is referable to a claim of right, not under such circumstances as that it may be supposed to have been permissive for the full period necessary to bar an action for the recovery of real property. Goddard on Easements [Bennett's Ed.], pp. 133 and 134; Washburn on Real Property [5 Ed.], top page 338. (5) In order to constitute a dedication of a way to public use, it is necessary that the owner should intend what he does as a dedication. Such intent must be affirmatively found, and the land owner is entitled to a trial of the fact by a jury. Washburn on Real Property [5 Ed.], top page 79. (6) Joseph Sullins being dead, and his title having been transferred to defendant, plaintiff was not a competent witness for himself to prove anything claimed to have transpired between himself and Sullins, going to support plaintiff's title to the easement of a way over the land as against Sullins, and as against defendant holding in privity with Sullins. 2 Revised Statutes 1889, sec. 8918; *Meier v. Thieman*, 90 Mo. 433. (7) No private right of way is alleged in the petition. The petition alleges the existence of a public road, the use thereof by plaintiff and others as an outlet, and the obstruction of the road by defendant so that plaintiff was prevented from traveling it, and that plaintiff was damaged thereby. The answer to this was a mere denial; hence the case decided by the court was not the case made by the pleadings, and the judgment should be reversed. *Crow v. Peters*, 63 Mo. 429.

*A. McElhinney* for respondent.

(1) A way of necessity to the easement in controversy was created in favor of the respondent by the

deed of Sullens to him in 1867. 2 Blackstone's Commentaries side p. 56; Goddard on Easements [Bennett's Ed.], p. 266; Washburn on Easements and Servitudes [4 Ed.], top pp. 258, 262; *Howton v. Frearson*, 4 Term R. 50 at p. 56; *Staples v. Hayden*, 6 Mod. 3; 3 Greenleaf's Cruise, title xxiv, side pages 25 to 30, side pages 85 to 91; *United States v. Appleton*, 1 Sumner's Rep. 492; *Hazard v. Robinson*, 3 Mason R. 272; *Brigham v. Smith*, 4 Gray 297; *Holmes v. Seeley*, 19 Wend. 507; *Nichols v. Luce*, 24 Pick. 103; *House v. Montgomery*, 19 Mo. App. R. 170. (2) In addition to the way of necessity, the respondent is entitled to a right of way by presumed grant, and long and continued user of the way for once and again beyond the entire period of limitation. Goddard on Easements [Bennett's Ed.], 134; Washburn on Real Property, 301; *Polly v. McCall*, 30 Ala. R. 20; *Ricard v. Williams*, 7 Wheat. 110; *House v. Montgomery*, 19 Mo. App. 170; *Baker v. Railroad*, 57 Mo. 265. (3) The law, by a fiction, from long user, will presume an original grant, as a matter of law, as an indisputable presumption. Washburn's Easements and Servitudes, 27, 28; *Blake v. Everett*, 1 Allen R., 248; *House v. Montgomery, supra,* and cases referred to in the opinion. (4) The petition and evidence has made out a case for injunction. High on Injunction [3 Ed.], top p. 646, sec. 849, p. 679, sec. 886.

BLACK, P. J.—This is an appeal from a decree enjoining the defendant from placing obstructions in a road. The questions are: Whether the alleged road is in fact a public highway, and if not, then whether it is a private way of necessity or by prescription. From the mass of evidence set out in the bill of exceptions, some of it conflicting and much of it of little or no value, we find the facts to be as follows:

In 1858 and prior thereto, Joseph Sullens owned 250 acres of land in St. Louis county, on which he resided. In that year, he leased the house and farming lands to the plaintiff Vossen: Vossen continued to occupy the land as the tenant of Sullens until 1867, when he purchased from Sullens the north 148 acres, being the part on which the Sullens house and outhouses stood. The remaining 102 acres were then unenclosed timber land, and lay in the form of a parallelogram, extending lengthwise south to the Olive street road. After Vossen purchased the 148 acres, he leased from Sullens a considerable portion of the 102 acres, being the part adjoining the land which he purchased. He cleared and enclosed the land so leased and continued to occupy it as the tenant of Sullens and the Sullens heirs down to 1889. In 1890 the heirs sold the entire 102 acres to the defendant.

When Sullens resided on the land he had an outlet or road, called in this record the Sullens road, extending from his house south through the 102 acres of open timber land to the Olive street road. The plaintiff Vossen, as the tenant of Sullens, used this road until he purchased the 148 acres in 1867, and he continued to use it until the defendant closed it in 1890. This is the road in question, and it may be added that it passed through that part of the 102 acres held by Vossen as the tenant of Sullens after 1867 and down to 1889.

Going back to the date when Sullens conveyed the 148 acres to Vossen, that is to say in 1867, we find the Olive street road ran east and west just south of the entire 250 acre tract. A mile or more north of the entire tract there was another east and west road called the Lackland road. There was also a public road, called the Schuetz road running from the Lackland road to the Olive street road in a northwest and southeast direction. This road passed on and along the north

line of the 148 acres for a distance of one-fourth to one-half a mile, and was about two hundred yards north of the plaintiff's house. The deed from Sullens to the plaintiff calls for this Schuetz road as one of the boundaries of the land conveyed. Such are the general facts bearing upon all of the issues.

1. The more specific facts bearing upon the issue whether the so-called Sullens road is or ever was a public highway are these: The plaintiff testified that he believed it was a public road, but being asked upon what he founded his belief, said he did not know any better. He says he and some of the neighbors worked this road on one or two occasions under the directions of Mr. Craig, the road overseer, and this statement is corroborated by the evidence of Craig. He admits, however, that he placed a locked gate across the north end of the road where it entered the Schuetz road, and that he placed another gate across it at the south side of his premises. The other evidence shows clearly and beyond all doubt that Sullens opened out the way over his own unenclosed timber land for his own convenience; that the greater portion of the country was then and down to 1867 unenclosed, and people traveled where they saw fit; that some of the neighbors used this way out to the Olive street road; that it was not a fixed or defined way, but changed from time to time from one locality to another, and that it was never deemed or considered a public road. There is no pretense that the county court ever laid it out or adopted it as a public road. Indeed the plaintiff's own conduct in placing the gates across it shows that he knew it was not a public road.

While a dedication of land to public use may be shown by acts and declarations and need not be evidenced by writing, still an intention to dedicate must be shown; and acts and declarations will not be suffi-

cient evidence of a dedication, unless they are of such a character as to show a clear purpose on the part of the land-owner to devote the property to public use. To constitute a common law dedication there must also be an acceptance by the public. *Baker v. Vanderburg*, 99 Mo. 379. Now, the evidence in this case fails to show any intention on the part of Sullens to dedicate this way to public use. It shows, and it shows only, that he opened it out for his own use on his own land. It is not and never was a public road. Of this there is no room for doubt.

2. The principle of law is of old standing and well settled that a grant of a way is presumed to have been made whenever land has been sold which is inaccessible, except by passing over the land of the grantor or by committing a trespass upon the land of a stranger. It is founded on the further principle that when a grant is made, every right is also presumed to have been granted, without which the subject of the grant would be useless. Goddard on Easements [Bennett's Ed.], 266, 267; Washburn on Easements [3 Ed.], 233.

But it is equally well settled that the presumption of a grant of way of necessity does not arise where the person claiming it has access to his land. A way of necessity exists only where the person claiming it has no other means of passing from his estate into the street or road. One cannot have a way of necessity because it is more convenient than the way which he has. Washburn on Easements [3 Ed.], 234, 235; *Cooper v. Maupin*, 6 Mo. 624; Goddard on Easements [Bennett's Ed.], 267, 270; *Nichols v. Luce*, 24 Pick. 102.

Again, the necessity limits the duration of the right of way. The rule on this subject is thus stated by Washburn: "And so limited is the right of way of

necessity in respect to its duration, that, though it remains appurtenant to the land in favor of which it is raised so long as the owner thereof has no other mode of access, yet the moment the owner of such a way acquires, by purchase of other land or otherwise, a way of access from a highway over his own land to the land to which the way belongs, the way of necessity is at an end; or, in other words, a way of necessity ceases as soon as the necessity ceases." Washburn on Easements [3 Ed.], 235.

Applying these principles to the case in hand, it must be evident that plaintiff has no way of necessity. When he purchased the one hundred and forty-eight acres of Sullens there was a public road on and along the north side of the land so purchased, and, that being so, there can be no presumption of a grant of a way over the other lands still held by Sullens. It is one or two miles further to the Olive street road by the Schuetz road than through the Sullens' one hundred and two acres, and the Schuetz road is as yet a dirt road, while the Olive street road is a rock road. These are all mere matters of inconvenience and do not lay any foundation for a right of way of necessity. There is some evidence tending to show that though the Schuetz road had been laid out by the county as far back as 1855, it was not opened up for travel until 1870. Conceding this to be true, still when it was opened up to travel the right to a way over the one hundred and two acres ceased. When the necessity ceased the right of way ceased.

3. It is next insisted that the plaintiff acquired a right of way over the one hundred and two acres belonging to Sullens by prescription. It is to be observed that no man can acquire an easement in his own lands. Nothing can therefore be claimed because Sullens used this way while he was the owner of the

entire two hundred and fifty acres. It is true the plaintiff used this way from 1858 to 1890. But it must be remembered that for nine years he occupied the one hundred and forty-eight acres as the tenant of Sullens, and from the expiration of that time to 1890 he held possession of the northern part of the one hundred and two acres, and through which part the way ran, as the tenant of Sullens and his heirs. To acquire a right of way over another man's land by prescription, the user must be under an adverse claim. Says Washburn: "And all the cases concur in the doctrine that the right must be exercised adversely to that of the landowner, since no length of enjoyment by his permission and under a recognition of his right to grant or withhold it at his pleasure, will ripen into an easement." 2 Washburn on Real Prop. [5 Ed.], 338. The plaintiff being a tenant of Sullens, his possession could not be adverse to Sullens. A tenant cannot by prescription acquire an easement in the land belonging to his landlord, for the possession and user of the tenant is the possession and the user of the landlord. Goddard on Easements [Bennett's Ed.], p. 12.

Further consideration of this case is unnecessary. It follows from what has been said that the decree of the circuit court cannot be sustained on any ground; and the judgment is reversed and the petition dismissed for want of equity. All concur.