James M. SEARS, an Individual, et al.,
Plaintiffs-Respondents,

v.

John Phillip NORMAN et al.,
Defendants-Appellants.

No. KCD 27395.

Missouri Court of Appeals,
Kansas City District.

Oct. 12, 1976.

Motion for Rehearing and/or Transfer
Denied Nov. 4, 1976.

David A. Oliver, Columbia, for defendants-appellants.

William D. Powell, Columbia, for plaintiffs-respondents.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

This suit seeks a declaration of the existence of a public alley and to enjoin the defendants from interfering with the public right of passage. After trial without a jury, the court found for the plaintiffs. Defendants appeal.

The property in question lies within a city block in Columbia, Missouri, bounded on the east by Ann Street, on the west by Williams Street, on the north by Amelia Street and on the south by Hinkson Street. The alley claimed by plaintiffs runs east and west from Ann to Williams, midway between the rear of residential structures facing Amelia and Hinkson. Defendants Mr. and Mrs. Norman and Mrs. Loesing own property on either side of the alleged alley at the extreme west end thereof next to Williams Street. They claim that the "alley" really constitutes a private drive for their sole benefit, and they blocked the passageway at their eastern property line by hauling in a load of dirt and erecting a fence.

Plaintiffs own property adjacent to the alley and lying east of the point at which the alley had been blocked by defendants. They filed this suit to challenge the legal right of the defendants to shut off the passageway. The petition states in part that it is brought as a class action, that the named defendants have been fairly chosen and adequately and fairly represent the whole class and that the defendants are being sued in a representative capacity.

The plaintiffs placed in evidence a plat of the northwest portion of the city block in question, this area being named J. C. and J. W. Schwabe Subdivision of Lot 9 of Stephens first Addition to the town (now City) of Columbia, Mo. That plat shows a 15′

strip south of the Norman property (7½′ of which is on Norman's lot) which is designated as a "private alley."[1] None of the parties introduced any plat of any subdivisions further to the east. The plat of Stephens first Addition does contain lines between Ann and Williams Streets south of Lots 9, 10 and 11, which might have been intended to reflect some sort of alley; but this plat contains no designation of that as an alleyway and no oral testimony explains or amplifies these markings. Nor has there been any showing, documentary or by testimony, as to the intended scope or the beneficiaries of the private alley which was shown on the Schwabe Subdivision plat. Plaintiffs make no reliance on the platted private alley as a source of rights, and defendants do not admit the right of anyone to use this passageway under any limited private easement. This case therefore presents no issue as to what rights, if any, accrued under what may have been originally some private right of way.

Instead, the evidence tendered by the parties focuses on the nature, extent and duration of use of an alley by the general public between Ann and Williams Streets. Plaintiffs' evidence tended to show general and continuous use by all members of the public commencing at least as early as the middle 1930's. Their evidence also tended to show that this use was made as a matter of right without any thought that permission was necessary from anyone. Plaintiffs also offered testimony that the alleyway has been maintained by the City in recent years just as other public alleys in the City, that the alley has been patrolled by City police, and that it was used for garbage collection. Defendants did not deny that use had been made as an alleyway, but they attempted to picture this as relatively minor and without any participation by the City. Their principal claim is that at all times use of the alleyway by parties other than themselves was purely permissive, not adverse under claim of right.

On this appeal, defendants raise five points. Their points 1 and 5 challenge the status of this proceeding as a class action, and both of those points will be discussed together. Points 2 and 4 challenge other procedural aspects of the case. Point 3 comes to grips with the underlying factual issue and will be discussed last in order.

I.

Defendants contend that the trial court erred in permitting this as a class action because: a) there is no showing that defendants were fairly chosen as representatives of the class; b) plaintiffs have not shown that it was impracticable to join all members of the class; and c) the facts do not show any justiciable controversy between plaintiffs and a class alleged to be represented by defendants.

Without the necessity of considering the first of those two objections, defendants' complaint against this as a class action is justified on their third ground stated above. The evidence in this case fails to show that anyone other than the named defendants has any objection to the public use of an alleyway between Ann and Williams Streets. The blockage of the alleyway was done solely by the named defendants, and was for the purpose of cutting off and protecting only their own property at the extreme west end of the alley. So, wholly apart from whether it was practicable for plaintiffs to bring all members of the alleged class into court and whether defendants fairly and properly represented all of the owners of land abutting the alley, this is not a proper situation for a class action.

Nevertheless, this case could properly proceed against the named defendants in their individual capacities and the case should now be considered on that basis.

While the body of the petition states that the action is brought as a class action, the prayer asks relief against the defendants individually as well as against the class of persons of which the defendants are claimed to be representative; and specifically the prayer asks that "the named defendants" be required to remove the obstructions from the alleyway. The prayer may be considered in ascertaining the type of action attempted to be set forth by the pleader. *O'Donnell v. Baltimore & O. R. Co.*, 324 Mo. 1097, 26 S.W.2d 929, 935 (1930); *King v. Guy*, 297 S.W.2d 617, 624 (Mo.App. 1957); *Duvall v. Stokes*, 270 S.W.2d 419, 423 (Mo.App.1954); *Hilderbrand v. Anderson*, 270 S.W.2d 406, 411 (Mo.App.1954); *Meisel v. Mueller*, 261 S.W.2d 526, 533 (Mo.App. 1953).

So construed, plaintiffs were suing defendants in their individual as well as in an alleged representative capacity. Even though the suit could not properly proceed as a class action, the court could properly proceed to rule the rights of the parties looking at defendants in their capacities as individual defendants. *State ex rel. St. Louis F.F. Ass'n Loc. No. 73 v. Stemmler*, 479 S.W.2d 456 (Mo. banc 1972).

■ If there could be doubt as to the construction of the petition as one undertaking to plead a cause of action against defendants individually, as well as against them in a representative capacity, that doubt becomes immaterial in view of the fact that the evidence in the case was all directed against defendants' actions as individuals, acts which were done by them solely in their own behalf and for the exclusive benefit of their own special properties at the west end of the alley. Furthermore, the defense offered by defendants was peculiar to their own property. The petition, if not otherwise susceptible to construction as being against defendants individually, has been automatically so amended to conform to the proof. Rule 55.33(b).

■ In view of the fact that this case was not properly one against a class, the judgment should be modified by eliminating that portion of the injunction order

which purports to operate against "the class of persons of which these defendants are representative." The declaratory portion of the judgment need not be modified, because under Rule 87.04 it will not affect the rights of any landowners who were not named parties to the proceeding. In effect, the declaration in the judgment of a public alley serves essentially as the predicate for the injunctional order.

## II.

Defendants object to the manner in which judgment was entered in this case. They say that on February 1, 1974, the trial court "entered judgment" as follows: "Court finds issues for plaintiffs and against defendants. Judgment in accordance with prayer of petition. Costs taxed against defendants." Subsequent to that, defendants filed motion for new trial, which was overruled, and defendants then filed their notice of appeal on May 24, 1974. Thereafter, the trial court requested the attorneys for plaintiffs to prepare a formal judgment entry. In response to that request, plaintiffs' attorneys prepared a more elaborate entry which included a legal description of the alleyway, taken from the prayer of the petition, and they presented this expanded judgment entry to the clerk of the court. By letter dated September 13, 1974, defendants' attorneys objected to this proposed judgment as being unauthorized. On September 16, 1974, plaintiffs' attorneys orally requested that the proposed judgment filed be withdrawn. Nevertheless, the trial judge signed the formal order as of February 1, 1974, and approved the transcript with that formal order included therein.

Defendants object to this entry of the judgment in September 1974 as being beyond legal authority. In their brief they argue:

"The 'judgment' in dispute was not a nunc pro tunc order to correct some clerical mistake in entering judgment but was an attempt to correct or modify an action previously taken. * * * The action of

the Court in entering a purported judgment more than three months after it lost jurisdiction over the action was void and of no effect."

Plaintiffs attempt to answer this argument by relying upon the efficacy of the judgment which they also say was "entered" on February 1, 1974, and which they speak of in their brief as "the original judgment."

■ If a judgment was in fact entered on February 1, 1974, that judgment would be effective to answer defendants' present objection. Even though the February docket entry was so abbreviated that it did not contain a legal description of the alley in question, it did note that judgment was granted "in accordance with the prayer of the petition" which did describe the claimed alleyway. That was sufficient, because the law is well settled that a judgment is to be construed with reference to the whole record, including the pleadings in the case. *Chuning v. Calvert,* 452 S.W.2d 580 (Mo.App.1970); *Rehm v. Fishman,* 395 S.W.2d 251 (Mo.App.1965); *State ex rel. Whatley v. Mueller,* 288 S.W.2d 405 (Mo.App.1956). Therefore, on the assumption that the February docket entry was a duly entered judgment, the subsequently entered September judgment added nothing of substance thereto; and even if the September judgment were to be considered void as contended for by defendants, still the February entry would constitute a perfectly valid and effective judgment standing alone.

■ However, neither the argument of the plaintiffs nor that of the defendants seems to portray quite accurately or approach correctly the procedural situation disclosed by the transcript on appeal in this case. Unlike the September, 1974 record entry which is denominated "Judgment," the February 1, 1974, record item is styled "Docket Entry." The latter term is generally used, and is used in various other places in the present transcript, to designate notations in the judge's minute book. Quite obviously what happened here is that the trial judge made a record of his ruling in his minute book in February, but that ruling was never entered by the court clerk on the judgment roll until the following September.

■ Under similar circumstances, it was held in *Pelz v. Bollinger,* 180 Mo. 252, 79 S.W. 146 (1904) that the formal judgment entry can be later supplied to the clerk by the attorney for the prevailing party, as was done here, regardless of the passage of the usually permitted time. It has also been held that under such circumstances the trial court may and should, even despite passage of the normal time, enter a formal judgment nunc pro tunc based upon the earlier entry on the minute book. *Neil v. Tubb,* 241 Mo. 666, 145 S.W. 766, 768 (1912); *Lakin v. Blum,* 43 S.W.2d 853 (Mo.App. 1931). The procedure by either of those means is justified on the principle that the notation made in the judge's minute book constitutes the "rendition" of judgment, which is the judicial act, and that the subsequent entry of a formal judgment on the judgment rolls is "a mere ministerial act evidencing the judicial act, but not essential to its validity, or giving to the judgment any additional force or efficacy." *Pelz v. Bollinger, supra.* See also in support of this principle, *Fleming v. Clark Township of Chariton County,* 357 S.W.2d 940 (Mo.1962) and *State ex rel. State Farm Mutual Automobile Ins. Co. v. Murray,* 438 S.W.2d 300 (Mo.App.1969).

Under the authorities just cited, the trial court acted properly and within his authority in making the formal judgment entry in September, 1974.

### III.

■ Defendants object next that there was a defect of parties in that the City of Columbia was not joined as a party to the case. In this connection defendants rely on Rule 87.04 which requires that in a suit for declaratory relief all persons be made parties "who have or claim any interest which would be affected." Defendants claim that the City had an interest which would be affected for the reason that "the city would

become responsible in the event it [the alley] is held to be a public way." Defendants cite no authority for that proposition. Plaintiffs take sharp issue, arguing that the City can have no responsibility except for streets which it has accepted, and that the effect of the judgment in this case affords to the City a free choice of either accepting or not accepting the alleyway. Plaintiffs further point out the provision of Rule 87.04 that "no declaration shall prejudice the rights of persons not parties to the proceedings" which would prevent the City from suffering any detriment by reason of this judgment.

These points need not be pursued for the reason that any defect in parties has been waived by the failure of the defendants to raise that issue either by motion or in their answer. *Ray v. Nethery,* 255 S.W.2d 817 (Mo.1953); *Hunt v. Easley,* 495 S.W.2d 703 (Mo.App.1973).

### IV.

Addressing the substantive issue in the case, defendants contend that the trial court erred in finding that a public alleyway had become established. On this issue, plaintiffs introduced substantial evidence showing use by the general public of the 15′ strip in question all the way from Ann Street to Williams Street for a continuous period of many, many years until 1971, when the alley was blocked by defendants. This period ran for far longer than the 10 years necessary to establish an easement by prescription. Defendants do not wholly deny that use, although they try to minimize the extent of the use and deny that the City of Columbia had undertaken maintenance; rather, the defendants' principal position is that the public use was merely permissive, not adverse. In support of that latter position, defendants offer testimony to the effect that the alley had been blocked by them on various occasions from time to time.

The key issue for determination therefore is whether the public use of the alley was permissive or adverse. A starting point for the consideration of this issue is found in the legal presumption that "in the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the period of the 10-year statute of limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so." *Fassold v. Schamburg,* 350 Mo. 464, 166 S.W.2d 571, 572(2). To the same effect: *Bridle Trail Association v. O'Shanick,* 290 S.W.2d 401 (Mo.App.1956); *Brown v. Redfern,* 541 S.W.2d 725, Missouri Court of Appeals, St. Louis District, handed down August 24, 1976; *Miller v. Berry,* 270 S.W.2d 666 (Mo.App.1954).

Defendants' evidence to show that they had from time to time blocked the alley, which constituted the only evidence which would tend to overcome the presumption mentioned, was as follows: 1) a tenant who lived in defendant Loesing's house for a period of 5½ years parked his cab in the alleyway between the Loesing and Norman residences, thereby effectively blocking passage by others; 2) defendant Norman also parked in the alleyway with the same effect; 3) Mr. Loesing during his lifetime stopped Mrs. Long when she attempted to drive through the alleyway to Williams Street; 4) the Loesings had annual birthday parties for Mr. Loesing during his lifetime, at which time the party would be held in the backyards of the Loesings and the Normans with the activities going across and thereby blocking the passageway in question.

One complete answer to all of that evidence is that none of the claimed blockage occurred during the first ten years of public use. According to one of the witnesses, who had the longest knowledge of this area, the public use had commenced in 1926, and other testimony placed the public use as beginning at least in the middle 1930's. So the ten year prescriptive period expired no later than the mid 1940's. Yet the blockages on which defendants rely are not claimed by them to have occurred until the later

1940's and thereafter. So, for example, the cab driver did not become a tenant of Mrs. Loesing until 1955 at the earliest and according to defendant Norman he did not become a tenant until 1964 or 1965. Whatever blocking of the alleyway was done by this tenant was therefore long after the prescriptive period had matured. Similarly, any parking by defendant Norman occurred only after he purchased his house just south of the alley in 1955—again long after the prescription period. As to any act by Mr. Loesing in stopping Mrs. Long and the claimed birthday parties for Mr. Loesing, that also came after the prescription period had already matured. The record shows that Mrs. Loesing was previously married to Mr. Bundy and Bundy did not die until 1948. Although the date of the Loesing marriage is not shown by the record, it of course could not have occurred until after Mr. Bundy's death. Accordingly, it must be inferred that Mr. Loesing's acts, if any, and his birthday parties described by defendants' testimony, also all occurred after the prescriptive period.

Once the prescriptive period had matured, a public easement came into existence and the minor acts relied upon by defendants could not have been sufficient to destroy that public easement. *Connell v. Baker,* 458 S.W.2d 573, 1. c. 577 (Mo.App. 1970) and cases therein cited; *Brown v. Redfern, supra.*

Aside from all that, the evidence as a whole was abundantly sufficient to support the court's finding of a public easement by prescription. There was ample testimony to show substantial use by the general public for well over a period of ten years, in the belief that the alley was a public way and that there was no need to obtain permission from anyone for passage. A number of witnesses, including a former employee of the City Street Department, testified that the City had been maintaining the alley by cutting weeds, grading and spreading gravel. This improvement and maintenance of the alley by the City with public funds is strong evidence in itself of an adverse pre-

scriptive use. *Terry v. City of Independence,* 388 S.W.2d 769 (Mo.1965). Additionally there was evidence that the City furnished police and garbage collection service through the alley.

Countering defendants' testimony that the alley had been blocked from time to time even prior to the erection of the fence in 1971, a number of witnesses testified that they had used the alley and that it had never been blocked. Other testimony was that a parked automobile might temporarily block passage on occasion, but that when the driver wanting through honked his horn the car would be moved so as to permit passage. In this connection it must be noted that defendant Loesing admitted that whenever her cab driver tenant parked his car in the alley and someone came along and honked a horn, "he certainly would" move his cab.

The judgment of the trial court in this court tried case must be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Applying that test, the trial court's conclusion that a public easement had become established cannot be disturbed.

To the extent specified in Section I of this opinion, the judgment is modified, and as so modified it is affirmed.

All concur.