Pierce M. LAWLESS, Sr. and Pauline T. Lawless, Appellants,

v.

SEARS, ROEBUCK AND COMPANY, Respondent.

No. KCD 28531.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

Thomas M. Sullivan, Eileen S. Sullivan, Kansas City, for appellants.

John R. Gibson, John W. Cowden, Kansas City, for respondent.

Before DIXON, P. J., and WASSERSTROM and TURNAGE, JJ.

WASSERSTROM, Judge.

At issue here is plaintiffs' claim to an easement right of way over a portion of defendant's land. Plaintiffs petitioned to establish such a right, to which defendant answered and counterclaimed for a declaration that they held the land in question free and clear of all easement. At the conclusion of plaintiffs' evidence, the trial court entered judgment on defendant's motion in its favor on both the petition and counterclaim. Plaintiffs appeal. We affirm.

Prior to 1953, a public alley ran south from 18th Street to 17th Street in the block in Kansas City bounded by Cleveland Avenue on the east and Askew on the west. Defendant owned all of the lots on the west side of the alley and the three northernmost lots on the east side. Plaintiff Pierce M. Lawless, Sr. and his then partner and their wives owned the balance of the lots on the east side of the alley. Plaintiff Pierce M. Lawless, Sr. and his partner operated the Lawless-Johnson Rug Company and made use of the alley in bringing merchandise into and out of their business location.

In 1953, all of the owners of these lots joined in a petition to vacate the alley. In connection with that action, they entered into an Easement Agreement For Joint Driveway dated December 15, 1953, in which the parties granted to each other mutual easements in the southern portion of the alleyway contiguous to the lots owned by the Lawless-Johnson partners and their wives. The agreement further provided that the strip described would be paved at defendant's expense, with the cost of repairing and replacing the original pavement to be shared equally thereafter. Of particular significance, the agreement stated that "said driveway . . . shall be used for the sole purpose of ingress and egress, *by way of 18th Street*, to and from the respective properties herein described." (Emphasis added).

The ordinance requested was enacted by the City on March 26, 1954. Thereafter the Lawless-Johnson Company continued to use the former alleyway very much as theretofore. Its trucks made use of the alleyway from two to four times daily, sometimes using the 18th Street entrance and sometimes the 17th Street entrance. Defendant placed chain-links across both entrances which were kept locked at certain periods, but defendant supplied Lawless-Johnson with keys to those locks.

In about 1968, spurred by the inner-city riots, defendant changed the closure of the exits from chain-links to fences equipped with locked gates. No keys were supplied to Lawless-Johnson for the new locks, but defendant advised them that defendant's employees would permit them access at anytime upon request. This led to a squabble at the 18th Street gate, which was was described by one of plaintiffs' sons as follows:

"And so I told him that the property belonged to us and that were were supposed to be able to, you know, at all times have access. And so I went back and I called over and asked for Mr. Getman. I can't remember whether I actually talked to Mr. Getman or not, but anyway they called me back after this happened and apologized and told me that this would never happen again, and that they had

informed the people in security downstairs that—apparently they weren't aware of this, you know, that they were supposed to do this when we called, and so then they said it would never happen again. And since then they have opened it, like during the day if we needed to get in there they have opened it."

No similar problem ever arose as to the 17th Street entrance. This apparently was due to the fact that the 17th Street entrance was rarely locked; but when that gate was locked all that Lawless-Johnson would have to do would be to call defendant and ask permission to get through, and Lawless-Johnson "would expect that permission would freely be given to get out the 17th Street gate."

Defendant has been using its property at this location primarily as a parking lot for its employees and also to some extent for customers. On some occasions the lot has been closed off so that it can be used for "tent sales." When not otherwise used, defendant has also permitted general public use such as practice by the Ararat Shrine motorcycle brigade on Sundays. Since about 1964 or 1965, plaintiffs' use of the alleyway has sharply decreased, to the point that they use it now only about once a month.

One of the Lawless sons testified that plaintiffs were not aware of defendant's claim that the northern portion of its lot was free of any easement rights until recently when defendant filed application with Kansas City to vacate 17th Street. When plaintiffs did become aware of that position on the part of defendant, plaintiffs instituted the present lawsuit.

Plaintiffs assign as error the finding by the trial court that their user of the northern portion of the former alleyway was permissive rather than adverse, so as to defeat plaintiffs' claim of an easement by prescription. They offer as their principal supporting argument the proposition that they showed more than ten years of open, continuous, visible and uninterrupted use of the alleyway, which they say gives rise to a presumption that their user was adverse

and casts upon defendant the burden of offering evidence to the contrary.

■■■ The law does recognize a presumption generally as stated by plaintiffs, but that presumption has no application in this case. The presumption comes into play only when there is no evidence as to the origin of the user in question. *Sears v. Norman,* 543 S.W.2d 300 (Mo.App.1976); *McIlroy v. Hamilton,* 539 S.W.2d 669 (Mo. App.1976). Here, plaintiffs' own evidence showed the origin and nature of the user and that evidence points convincingly to permissive rather than an adverse use. See, for example, *Miller v. Archdekin,* 497 S.W.2d 178 (Mo.1973), where the giving by the owner to the user of a key to the gate to the premises was treated as a significant factor to show that the use was permissive rather than adverse.

Plaintiffs complain that the trial court erred in reaching its conclusion concerning the character of the use by reason of having excluded from consideration a certain letter offered by plaintiffs as Exhibit No. 2. That letter was addressed by defendant to Lawless-Johnson on September 25, 1953, and opened the negotiations which led to the ultimate easement agreement dated December 15, 1953. The September letter did make a proposal which would have covered the entire area of the public alley, as opposed to the ultimate agreement dated December 15, 1953, which covered only the southern portion of that alley. The trial court refused to admit the letter in evidence on the ground that it violated the parol evidence rule.

■■■ Plaintiffs argue that Exhibit No. 2 did not violate that rule for the reason that it was not offered to alter or modify the December agreement, but rather was for the purpose of explaining plaintiffs' understanding (even though mistaken) which gave rise to their belief that they were making a use of the entire former public alley under a claim of right. The trial court did not err in excluding Exhibit No. 2. Any understanding by the parties with respect to their rights necessarily is

governed by their ultimate contract into which all of the prior negotiations have been merged. *Walters v. Tucker*, 281 S.W.2d 843, 847 (Mo.1955); *Monia v. Oberle*, 530 S.W.2d 452, 457 (Mo.App.1975). They cannot be heard as saying they relied on a proposal which was later superseded by a written agreement which integrated all previous negotiations.

Plaintiffs also assign as error the finding by the trial court that their use of the property in question was not "exclusive." They deny that exclusivity is an element to be established in order to obtain a prescriptive right. Plaintiffs are correct to the extent that their user need not have been preemptive of use by everyone else. On the other hand, their use would have to meet the requirement of being "exclusive" in the sense that their claim of right would have to be particular to themselves as opposed to arising simply as a member of the general public. As sometimes stated, "[t]he adverse user must be exclusive in the sense that the right does not depend for its enjoyment on similar rights in others." *Cramer v. Jenkins*, 399 S.W.2d 15 (Mo.1966); 28 C.J.S. Easements § 15, p. 658. In order to create an independent prescriptive right in such a case, "the individual user must perform some act to the knowledge of the servient owner clearly indicating his individual claim of right." *Zinser v. Lucks*, 361 Mo. 671, 235 S.W.2d 844, 851 (1951). The trial court therefore did not err in treating exclusivity as an element which had to be proved by plaintiffs in order to make a case.

Finding no error, the judgment is affirmed.

All concur.