Avery A. **FORTENBERRY** and Janis C. Fortenberry, Respondents,

v.

Philip **BALI** and Celestena Bali, Appellants.

No. 46928.

Missouri Court of Appeals, Eastern District, Division Three.

March 13, 1984.

Joseph L. Racine, Clayton, for appellants.

John J. Stewart, Clayton, for respondents.

REINHARD, Judge.

Plaintiffs Avery and Janice Fortenberry instituted suit pursuant to § 228.340, RSMo. 1978, to establish a private road by reason of strict necessity across land of the defendants, Philip and Celestena Bali. Defendants appeal after the circuit court found plaintiffs had no means of access to their property and therefore were entitled to a road of necessity over defendants' land.

The plaintiffs alleged in their petition that they are owners of land in St. Louis County, that no public road passes through or alongside their land, and that a private road across defendants' property is necessary to connect plaintiffs' property with a public street. Defendants' answer denied that plaintiffs are entitled to a statutory road by reason of strict necessity through their land and averred that plaintiffs had access to the public streets. A rough sketch of the properties involved is set forth below; a general outline of the salient facts established at trial follows:

DIAGRAM #1

**Legend**

1. Plaintiff's land originally owned by Michael Schmidt, then to John Braun, then to M. K. Duebbert, then to plaintiffs.

2. Defendants' land originally owned by Michael Schmidt, then to Henry Schmidt, then to defendants.

3. Henry Schmidt's land: Michael Schmidt to Henry Schmidt.

Michael Schmidt, father of defendant, Celestena Bali, acquired a 30 acre tract of land in 1898. Shortly thereafter, he built his home on the property and began farming. His sole means of ingress and egress was a private road called "Snowdrift Lane" which ran south from his property to a public road. Michael Schmidt used Snowdrift Lane regularly to transport his farm products; to facilitate its use, he paved Snowdrift Lane with rock from his property line to the public road.

In 1922, Michael Schmidt sold two acres to John Braun, together with an easement across Schmidt's remaining land. Schmidt later sold the remaining 28 acres to his son, Henry Schmidt, who continued to farm the land and use Snowdrift Lane as his method of ingress and egress. In 1951, Henry Schmidt sold to defendants an 11.5 acre tract which bordered the two acres owned by Braun. (See diagram # 1). Defendants' deed recognized the easement running with Braun's land across their property up to Snowdrift Lane. (Henry Schmidt retained ownership of the property which actually abutted Snowdrift Lane). Braun subsequently conveyed his two acres to M.K. Duebbert who, in 1977, sold the tract to plaintiffs.

The deeds to Braun, then Duebbert and finally to plaintiffs did not mention the recorded easement. However, the evidence established that Michael Schmidt, Henry Schmidt and the defendants used Snowdrift Lane as the sole means of ingress and egress to their properties. Furthermore, when plaintiffs purchased their two acre tract, it was represented to them and they believed that the singular means of access to their two acre parcel was over the gravel road called Snowdrift Lane and then along the easement running through defendants' land.

A short time after plaintiffs purchased their two acre tract, a third party, Ott, purchased property to the south encompassing a portion of Snowdrift Lane. The new owners constructed a house on the property and proceeded to sod over and plant a tree in the middle of Snowdrift Lane.

The trial court found that there was a recorded easement extending from plaintiffs' property to Snowdrift Lane; that the heirs of Henry Schmidt had a prescriptive easement over Snowdrift Lane which was never perfected (it is obvious from the record and the findings that the court must have meant Michael Schmidt); and that because the prescriptive easement in Snowdrift Lane was never perfected and because the recorded easement and prescriptive easement did not intersect, plaintiffs had no means of ingress and egress. With respect to the lack of intersection, the court reasoned that since the recorded easement did not actually cross over or abut the prescriptive easement, plaintiffs had no way of turning the corner without trespassing on Henry Schmidt's property. (See diagram # 2).

DIAGRAM # 2

Based on the above findings, the trial court found the plaintiffs had no legally enforceable means of access to their property and therefore were entitled to a private road by strict necessity.

■ It was not disputed that plaintiffs' property neither intersected nor abutted a public roadway. Therefore, the sole issue is whether plaintiffs have a legally enforceable right to use any alternative route. *Hill v. Kennoy, Inc.*, 522 S.W.2d 775, 777 (Mo. banc 1975). If plaintiffs had such a right, then they have no right, by necessity, to a way over defendants' land. *Id.* Based on the record, it appears that a

legally enforceable alternative route is available to plaintiffs.

■ It has been held that a prescriptive easement is established "by use which is shown to have been continuous, uninterrupted, visible and adverse for a period of ten years." *Guerin v. Yocum,* 506 S.W.2d 46, 47 (Mo.App.1974). *See Carpenter-Union Hills Cemetery v. Camp Zoe, Inc.,* 547 S.W.2d 196 (Mo.App.1977). The requisite elements of a prescriptive easement were established with respect to Snowdrift Lane. A right of way by prescription arose sometime prior to the 1922 conveyance by Michael Schmidt of the two acres to John Braun, plaintiffs' predecessor in interest. Michael Schmidt purchased the original 30 acre tract in approximately 1898. Undisputed testimony indicated that he then laid rock along the entire length of Snowdrift Lane and used it to haul produce from his farm to the public road. Such evidence, without more, gave sufficient notice to any adverse party that Schmidt was exercising dominion and control over this land strip, under claim of title, adverse to anyone else. Furthermore, "[t]he essence of prescription is use ...." *McDougall v. Castelli,* 501 S.W.2d 855, 859 (Mo.App.1973).

> *In the absence of some showing that the use was permissive in its origin,* it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the statutory period, the burden is cast upon [the opposing party] to show that the use was permissive, rather than adverse ....

*Carpenter-Union Hills Cemetery v. Camp Zoe, Inc.,* 547 S.W.2d at 200 (emphasis original). *See United States v. 43.12 Acres of Land, More or Less,* 554 F.Supp. 1039, 1041 (W.D.Mo.1983); *Benson v. Fekete,* 424 S.W.2d 729, 738 (Mo. banc 1968). There is

no evidence that Michael Schmidt's use of Snowdrift Lane was permissive. To the contrary, all the evidence supported a prescriptive easement over Snowdrift Lane in Michael Schmidt at the time he transferred the two acres.

■ The benefit of an easement belonging to the dominant tenement accrues to the benefit of all those purchasing any part thereof. *See Annot.,* 10 A.L.R.2d 960, 963 (1966); Restatement of the Law of Property § 488 (1944); *See also Foxx v. Thompson,* 216 S.W.2d 87, 90 (Mo.1948); *Karches v. Adolph Investment Corp.,* 429 S.W.2d 788, 791–92 (Mo.App.1968). When Michael Schmidt conveyed the two acres to Braun, the transfer carried with it the right to use the easement appurtenant to the dominant tenement, namely Snowdrift Lane, as a means of access to the purchased property.

■ The trial court's finding that plaintiffs have a recorded easement from the edge of their property to Snowdrift Lane is undisputed. The fact, however, that this recorded easement did not intersect with Snowdrift Lane did not deprive the original purchaser of the right to its use. It is well settled "that a grant of a way is presumed to have been made whenever land has been sold which is inaccessible except by passing over the land of the grantor ...." *Vossen v. Dautel,* 116 Mo. 379, 385, 22 S.W. 734, 735 (1893).[1] Therefore, irrespective of whether the recorded easement granted in 1922 by Michael Schmidt to Braun intersected with the prescriptive easement in Snowdrift Lane, Braun had an easement over Michael Schmidt's land to reach Snowdrift Lane.[2]

Since "an easement ... annexed as an appurtenance to land by an express or implied grant of reservation or by prescription ... passes with the transfer of the land, although not specifically mentioned in

1. The evidence establishes that plaintiffs also instituted suit for damages against the Otts and others infringing upon their easement (Snowdrift Lane), claiming that they have deprived plaintiffs of ingress and egress to their property.

2. Missouri courts variously refer to this easement as a "common law easement by strict

necessity," *Lewis v. Hilkerbaumer,* 599 S.W.2d 7, 8 n. 1 (Mo.App.1980), and "a grant of a way." *Vossen v. Dautel,* 22 S.W. at 735. All terms fall under the scope of an implied easement. *See* Restatement of the Law of Property § 474 (1944).

the transfer," *Beldner v. General Electric Co.*, 451 S.W.2d 65, 75 (Mo.1970), Braun's rights in the recorded easement, the implied easement or "grant of a way" over the Schmidt's land, and the prescriptive easement in Snowdrift Lane passed from Braun to Duebbert to plaintiffs. Thus, plaintiffs have an enforceable means of ingress and egress from their property.

 In this case plaintiffs argue that the prescriptive easement originally established by Michael Schmidt was extinguished by a third party purchase of the property over which Snowdrift Lane ran. It is true that generally a bona fide purchaser of land without knowledge or notice, actual or constructive, of an easement in the land takes title free of any such burden. 25 Am.Jur.2d *Easements and Licenses* § 97 (1966); 28 C.J.S. *Easements* § 50 (1941); *Annot.*, 174 A.L.R. 1241, 1243 (1948). There is a presumption, however, that the purchaser has constructive notice where an ordinary inspection of the property would have revealed the servitude. *Guerin v. Yocum*, 506 S.W.2d at 48. It is further presumed that the parties in interest will act with reference to this burden when contracting for the land. *Missouri Power and Light Co. v. Thomas*, 340 Mo. 1022, 102 S.W.2d 564, 566 (Mo.1937). This presumption operates independently of the question whether those enjoying the benefit of the easement have perfected it. *Id.*

 Here, plaintiffs have failed to show that the third party purchaser lacked notice. "Notice may be inferred from the circumstances and express notice is not necessary." *George v. Dickinson*, 504 S.W.2d 658, 662 (Mo.App.1974). The record indicates that Michael Schmidt paved Snowdrift Lane with rock in 1898. The gravel was clearly visible when plaintiffs purchased their two acres in 1977. The existence of a gravel road provides the requisite notice to third parties of the prescriptive easement. Plaintiffs have taken no action indicative of abandonment since that time.

In summary, the evidence supports the court's finding that a prescriptive easement exists and that the plaintiffs enjoy the ben-efit of that easement by conveyance. The court erred, however, in determining that plaintiffs' right of ingress and egress was blocked by the Schmidt land in that plaintiffs' predecessor by law received a "grant of a way" over the land and plaintiffs have the benefit of this right. Plaintiffs, thus, have a legally enforceable means of access to their land.

 In reaching this conclusion, however, we recognize that our determination cannot affect those not a party to this suit. Therefore, if, in a separate action, plaintiffs are unable to establish a means of access to public roads, this action should not be considered in any way a bar to any future action by the plaintiffs to establish a road of necessity.

Judgment reversed.

KAROHL, P.J., and CRANDALL, J., concur.