**GILL GRAIN COMPANY, Appellant,**

v.

**Dale POOS, et al., Respondent.**

**No. WD 36580.**

Missouri Court of Appeals,
Western District.

Feb. 18, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
March 27, 1986.

Frank P. Sebree, Kansas City, for appellant.

Robert H. Shaw, Don Witt, Platte City, for Glen and Dale Poos.

John R. Cady, Platte City, for Lois C. Werly, Shirley Bruno, Ruby Cecil and Marian Wheeler.

Before CLARK, P.J., and PRITCHARD and BERREY, JJ.

BERREY, Judge.

Plaintiff, the Gill Grain Company, appeals from a judgment granting the defendants, Glenn and Dale Poos, a prescriptive easement and denying relief on its petition for quiet title and trespass. Plaintiff also appeals a directed verdict at the close of all the evidence for defendants, Lois C. Werly, Shirley Bruno, Ruby Cecil and Marian Wheeler, (hereinafter Cecil heirs) on a claim for the breach of warranty.

The properties involved are located in Platte County, Missouri, and consist of two parcels of land which are divided by the Missouri State Route 45 and the Chicago, Burlington and Quincy Railroad. The right-of-way was granted to the railroad by K.B. and Ruth Cecil, grandparents of the Cecil heirs. This right of way is about forty feet west of and runs parallel with Missouri Route 45. The property to the west of this division is designated as Tract A and the property to the east is designated as Tract B.

Approximately 660 feet to the west of Tract A's eastern edge (that abuts the railroad's right-of-way) lies an old abandoned Chicago, Burlington and Quincy Railroad right-of-way. It is described as the "old cinder block trail." The location of the alleged easement is in Tract A and runs approximately fifteen feet south of and parallel to the northern edge of the tract, from the cinder block trail to the center line of the Chicago, Burlington and Quincy Railroad.

The Cecil heirs inherited Tract A and B upon the death of their father, Samuel Marion Cecil, in 1928. In 1934, L.K. Poos, Glenn Poos' father, began leasing the Cecil properties as a tenant farmer, and in 1936, became a tenant farmer on the property adjacent to Tract A to the north. L.K. Poos then purchased the adjacent property in 1937.

L.K. Poos and Glenn Poos, who helped his father farm the properties, would cross Tract A using the disputed roadway, located on the northern edge of the tract, to gain access to their own property. They also used the road for access to Tract B. The tenant arrangement between L.K. Poos and the Cecil heirs continued until 1944 when L.K. Poos retired.

Much of the evidence focused on the time between 1944 and 1955, the alleged prescriptive period. Several of the Cecil heirs believed Glenn Poos was a tenant farmer on the tracts during this period. Although Glenn Poos stated in his deposition on February 16, 1981, that he began farming the Cecil property in 1944, Glenn testified that after he checked his records at home he found he did not begin the tenancy arrangement until 1955. He stated he corrected his deposition in February, 1981 seven months prior to trial.

There was testimony from Robert Baker and Walter J. Searcy[1] that Carl Oliver

---

1. Robert Baker is the nephew of Carl Oliver and lived on the Cecil property from 1944 until 1949. He started keeping Mr. Oliver's books in

leased and farmed the Cecil property from 1944 until his death in 1955. Although Mr. Oliver and Glenn Poos traded work, Mr. Baker stated they were never partners.

Dale Poos testified that from 1944 to 1955, he and his dad traveled back and forth on the disputed "road" as an access road to their farm which was adjacent to Tract A. Glenn testified that because he used the "road" he often took care of it by mowing the grass. He stated he never asked anyone if he could use the road. Several of the Cecil heirs testified, however, that when neighbors, including the Poos', crossed Tract A it was with their implicit permission as a neighborly gesture.

Glenn Poos stated he began leasing the Cecil property in 1955. Dale helped his father with the farming and in 1972, after his dad's retirement, he began a year-to-year tenancy with the Cecil heirs. Dale testified that throughout his tenancy with the Cecil heirs he continued using the roadway because it was the only access to his property.[2]

On February 16, 1978, the Cecil heirs sold Tract A and B to appellant, the Gill Grain Company. Ray Gill, the president of Gill Grain, stated that prior to the sale he made several inspections of the tracts and found no evidence of a "road."

Mr. Gayle Eutcher, a licensed surveyor, was hired by appellant prior to the purchase. Mr. Eutcher testified he did not indicate any roadway or easement on his survey because he found no easement of record. The surveyor, however, stated he observed "visible ruts" which he further described as a "field road." Glen Poos testified that as he helped Mr. Eutcher locate a landmark for his survey he took him across the "road" in his pick-up truck.

Descriptions of the "road" varied. The width of the disputed road ranged from eight feet to fifty feet. Witnesses described it as a dirt path, a dirt roadway, a

field road as well as a country lane. Ruby Cecil Adams told of walking across the "lane" to catch the school bus as a girl in the 1930's. Evidence in the record also showed the road had been used as a traffic detour in 1953 while Highway 92 was being built.

The disputed road was identified in an Atlas of the county published in 1907. The road was visible on aerial maps taken in 1953 and 1965. Additionally, it was identified in the United States Geological Survey maps dated 1961.

Appellant asserted it was not aware of the alleged easement until Ray and John Gill investigated and found that Dale Poos was driving his farm equipment on the cinder block trail and then across the appellant's property to gain access to Route 45. Dale Poos refused to stop using the disputed road after requests by the appellant and finally, appellant filed suit.

In its second amended petition appellant asserted a trespass action for damages and an action to quiet title against the Poos'. Gill Grain also asserted a breach of warranty of good title claim against the Cecil heirs. The Cecil heirs filed a cross-claim against Dale Poos for slander of title. The Poos then filed a counter-claim against Gill Grain alleging prescriptive easement and seeking quiet title.

The trespass claim against defendant Glenn Poos was dismissed at the close of the plaintiff's evidence. The appellants' claim of breach of warranty against the Cecil Heirs and the claim for slander of good title against the Poos' were dismissed at the conclusion of all the evidence. The trial court granted defendant Glen Poos a prescriptive easement and denied appellant relief on all counts of its petition. This appeal ensued.

Appellant alleges trial court error in granting the prescriptive easement in that (1) the trial court erroneously found the

---

1945 or 1946. Mr. Searcy stated he lived with Mr. Oliver from 1945 until 1950.

**2.** There was testimony, however, by Robert Baker that there was access to the Poos' property by

"going over the overpass" but that it was unsafe to do so with farm machinery. The Poos' did not base their right to use the disputed roadway under a theory of necessity.

facts gave rise to a presumption of adverse use under a claim of right and (2) that the trial court mistakenly ruled that appellant failed to prove the use of the Cecil property was permissive. Additionally, appellant contends the trial court's finding that appellant had notice of this easement is unsupported by the evidence.

As a preliminary matter, with a court-tried case, the appellate court may not set aside the judgment below unless it is under a firm belief that it is wrong. The trial court's judgment will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ To establish a prescriptive easement the evidence must show a continuous, uninterrupted visible and adverse use for a period of ten years. *Fortenberry v. Bali*, 668 S.W.2d 216, 219 (Mo.App.1984). Because prescriptive rights are not favored in the law, *Cook v. Bolin*, 296 S.W.2d 181, 187 (Mo.App.1956), these requirements must be established by clear and convincing evidence. *George v. Dickinson*, 504 S.W.2d 658, 663 (Mo.App.1974).

■ The party claiming the right of use, however, enjoys a presumption that the use is adverse and under a claim of right when there has been a long and continuous use of the disputed property. *Id.* This presumption casts the burden upon the landowner to show the use was permissive and not adverse. *Lawless v. Sears, Roebuck & Co.*, 555 S.W.2d 79, 81 (Mo.App. 1977). Appellant, relying on *Lawless, supra*, at 81, asserts that no presumption should have arisen in this case because there was "evidence as to the origin of the user in question." Cases cited by *Lawless, supra*, and others, however, also note that evidence must reveal that the use was "originally permissive" to stop the presumption from arising. *Sears v. Norman*, 543 S.W.2d 300, 305 (Mo.App.1976). In the *Lawless* case, plaintiff's [the party asserting the adverse use] own evidence showed

the parties had originally entered into an "Easement Agreement."

Appellant states the origin of the Poos' use is permissive in that it was the custom and practice of the neighborhood to grant permission to cross each other's properties. The Cecil heirs, however, admitted that they had not granted Mr. Glenn Poos permission to use the road although he did so openly. In the same vein, Mr. Glenn Poos testified that he had never requested permission to use the road and that no one interfered with his use. The court in *Burgess v. Sweet*, 662 S.W.2d 916, 918 (Mo.App. 1983) found an adverse use rather than a permissive one and noted that:

> The record reflects there were never any requests or denials of permission to use said road and that it was always used openly. The use of the roadway by the plaintiffs and their predecessors was open and visible and was never interfered with or barred.

Appellant also alleges there existed a permissive origin because L.K. and Glenn Poos began using the roadway as part of the tenancy arrangement with Cecil heirs. This court recognizes that a tenant's use of the landlord's property is always permissive. *Guerin v. Yocum*, 506 S.W.2d 46, 48 (Mo.App.1974). Nevertheless, the evidence in the instant case did not establish that the Poos' used the roadway permissively to gain access to their own property which lies adjacent to the north.

Citing to *Burnett v. Sladek*, 251 S.W.2d 397, 398 (Mo.App.1952) and *Cook v. Bolin, supra*, appellant also suggests the presumption does not apply where the claim of right regarding the use pertains to unenclosed lands. These cases are factually distinguishable because the property at issue cannot be characterized as wild, rough land or unsettled territory. *See Carpenter-Union Hills Cemetery Association v. Camp Zoe, Inc.*, 547 S.W.2d 196, 201–2 (Mo.App.1977).

■ The presumption of adverse use under a claim of right may be rebutted by evidence to the contrary. *Bridle Trail As-*

*sociation v. O'Shanick,* 290 S.W.2d 401, 406 (Mo.App.1956). The trial court, however, found appellant had not rebutted that presumption. In a court tried case, this court gives deference to the trial court's evaluation of the credibility of the witnesses; the judgment will not be disturbed unless substantial evidence is lacking. *Munday v. Thielecke,* 646 S.W.2d 817, 818 (Mo. App.1982).

Appellant asserts that the evidence establishes Glenn Poos was under a tenancy arrangement with the Cecils from the years 1944 to 1955 because several of the Cecil heirs testified they believed as such and that cancelled checks admitted into evidence showed payment for services rendered by Glenn Poos during this span. Appellant also directs this court to Glenn Poos' deposition testimony in which he stated he began the tenancy with the Cecils in 1944 in contradiction to his trial testimony in which he stated he began the relationship in 1955.

Glenn Poos testified at trial that after his deposition was taken he checked his records and found he did not actually begin to work as a tenant farmer on the Cecil property until 1955. He stated he corrected his deposition in February 1981. It is for the trial judge, not the appellate court, to determine the credibility of the witnesses and he is free to believe or disbelieve all or part of the testimony of the witnesses. *Mills v. Cameron Mutual Insurance Co.,* 674 S.W.2d 244, 247 (Mo.App.1984). This court must accept any permissable inference drawn from the evidence which is favorable to the respondent and disregard any contradictory testimony. *Id.*

The cancelled checks from Laura Cecil, mother of the Cecil heirs, to Glenn Poos for threshing oats, hauling corn, bulldozing and for seed wheat do not necessarily establish a tenancy relationship. These services may have been provided on an independent contract basis. Robert Baker, bookkeeper and nephew of Bill Oliver, testified that during the pertinent time frame, Bill Oliver retained the tenancy arrangement with the Cecil heirs. He also stated there was not a partnership between Bill Oliver and Glenn Poos. Walter Searcy, a witness, who lived with Mr. Oliver, substantiated the testimony of Robert Baker and Glenn Poos with respect to the tenancy during the prescriptive period.

Appellant also maintains that the testimony of Glenn Poos additionally reveals his use lacked adversity and was never made under a claim of right. Appellant refers to Glenn Poos' testimony on cross-examination in which, when asked whether he claimed he owned the road, Mr. Poos answered, "No." Mr. Poos' response does not, however, make his actions during the prescriptive period any less adverse. The court in *George v. Dickinson, supra,* at 663, n. 5, stated that "[t]he claim of right need not be expressed in words or that the adverse party expressly admit his knowledge of it. These facts may be inferred from the use. It is sufficient that the person acts in such a manner as clearly indicates he claims title to the easement."

From 1944 to 1955 there was no evidence that Glenn Poos sought permission to use this roadway to gain access to his property. He testified he maintained the roadway by mowing the grass to serve his own purposes. Glenn Poos' action revealed that at the time of his use he did not recognize the authority (the Cecils') which could either prevent or permit his continued use. *McDougall v. Castelli,* 501 S.W.2d 855, 858 (Mo.App.1973).

Additionally, appellant argues that as a bona fide purchaser, its ownership rights in the property at issue should not be diluted by a prescriptive easement because it had no actual or constructive knowledge of its existence. This court recognizes that ordinarily a bona fide purchaser of real estate takes title free of an easement where there is no knowledge or actual or constructive notice. *Fortenberry, supra,* at 220; *Guerin v. Yocum, supra,* at 48. In *Fortenberry, supra,* at 220, the court noted that one is held to constructive notice where "an ordinary inspection of the property would have revealed the servitude."

The evidence clearly shows the Gill Grain Company should be held to such notice. Although descriptions of the road varied from witness to witness, minimally, its existence as a "field road," as acknowledged by Mr. Eutcher, appellant's surveyor, should have aroused the suspicions of the appellant and its agents. Because of the road's location on the property, a simple visible inspection of the boundary lines would lead one to this servitude. Therefore, the trial court properly held appellant had the requisite notice to be subject to a prescriptive easement.

■ Appellant's second proposition is that the trial court erred in granting defendants Cecil heirs' motion for directed verdict at the close of all the evidence denying appellant relief on its claim for breach of warranty. It asserts that if there is indeed a prescriptive easement, then the Cecil heirs are liable under the warranty deed because they did not mention the existence of the easement.

■ By the words "grant, bargain and sell" contained in the warranty deed, the Cecil heirs warranted that the estate was "free from encumbrances done or suffered by the grantor or any person under whom he claims." § 442.420, RSMo 1978; *see A.C. Drinkwater, Jr., Farms, Inc. v. Ellot H. Raffety Farms, Inc.,* 495 S.W.2d 450, 455 (Mo.App.1973). Although it is established that Gill Grain had constructive notice of the easement, this cannot be used as a defense to preclude recovery on a warranty. *See Hillman v. Hedgpeth,* 600 S.W.2d 625, 629 (Mo.App.1980).

■ The measure of damages where there is a breach of such a covenant is the "difference between the market value of the land subject to the easement, and, its market value if the easement did not exist." *Clough v. Securities Reserve Corporation,* 153 S.W.2d 93, 98 (Mo.App.1941); *See also, Letsch v. Pickworth,* 559 S.W.2d 77, 78 (Mo.App.1977). Evidence of this diminution must be produced. *Misch v. C.B. Contracting, Co.,* 394 S.W.2d 98, 101 (Mo.App.1965); *Peters v. Shull,* 379 S.W.2d 837, 841 (Mo.App.1964).

Accordingly, the trial court judgment is reversed on plaintiff's claim for breach of warranty and the cause is remanded to the trial court to consider the amount of damages to be allowed in light of this opinion. The trial court's judgment granting the prescriptive easement is affirmed.

All concur.